FILED
CLERK

February 1, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JAMES GROSS,

                   Plaintiff,

                  -against-

MICHAEL SANCHEZ Detective; Individual and
Official Capacity, EUGENE LOPEZ Detective; Individual and
Official Capacity, OFFICER SANCHEZ Police Officer; Individual
and Official Capacity, DEIDRE HORNEY District Attorney;
Individual and Official Capacity, C. RANDALL HINRICHS Judge;
Individual and Official Capacity,
JOHN WHITE D.A. Investigator; Individual and
Official Capacity, ROBERT DITO D.A. Investigator; Individual
and Official Capacity, THOMAS SPOTA District Attorney;
Individual and Official Capacity, JAMES BURKE Suffolk
Police Chief; Individual and Official Capacity,
CHRISTOPHER McPARTLAND Corruption Bureau;
Individual and Official Capacity, THOMAS SPOTA III
Suffolk County District Attorney,

                Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20-CV-4873 (DG) (JMW)

**A P P E A R A N C E S:**

James Gross
09-A-1719
**Green Haven Correctional Facility**
P.O Box 4000
Stormville, NY 12582
*Plaintiff Pro Se*

Arlene S. Zwilling
**Suffolk County Attorney's Office**
P.O. Box 6100
H. Lee Dennison Building-Fifth Floor
100 Veterans Memorial Highway
Hauppauge, NY 11788-0099
*Attorneys for Defendants Michael Sanchez,
Eugene Lopez, Deidre Horney, James Burke*

1

*No Appearance by Defendants Officer Sanchez,*
*C. Randall Hinrichs, John White, Robert Dito,*
*Thomas Spota, Christopher McPartland,*
*Thomas Spota III.*

**WICKS,** Magistrate Judge:

*Pro se* plaintiff James Gross describes this action as follows:

*The gravamen of Plaintiff's claims concern the fairness and legality of the proceedings leading to his criminal conviction that have been compromised by malicious prosecution and the arbitrary misconduct of the former Suffolk County District Attorney and attached agencies.*

(DE 73 at 1.)

Plaintiff sought relief in June 2020 by Writ of Habeas Corpus petition challenging his March and July 2009 convictions for several counts of robbery. *Gross v. Royce*, No. 20-CV-03037 (DG), 2021 WL 2291839, at *1 (E.D.N.Y. June 4, 2021). Plaintiff asserted claims of ineffective assistance of counsel, due process, and actual innocence. *Id.* These claims were ultimately dismissed. *Id.*

Plaintiff commenced this civil action shortly after his habeas action, in October 2020, seeking damages under 42 U.S.C. § 1983 against Defendants Michael Sanchez ("Sanchez"), Eugene Lopez ("Lopez"), Officer Sanchez ("Alex Sanchez")[1], Deidre Horney ("Horney"), C. Randall Hinrichs ("Hinrichs"), John White ("White"), Robert Dito ("Dito"), Thomas Spota, James Burke ("Burke"), Christopher McPartland ("McPartland"), and Thomas Spota III (together with Thomas Spota as "Spota") violated his constitutional rights during Plaintiff's state criminal prosecutions. (DE 8.)

---

[1] Plaintiff does not offer a full name for "Officer Sanchez" in his Amended Complaint. (*See* DE 8.) Plaintiff later identifies "Officer Sanchez" as Alex Sanchez, an officer from the Suffolk County Police Department – 6th Precinct. (*See* DE 80.)

Before the Court, on referral from Honorable Diane Gujarati, are Defendants Sanchez, Lopez, Horney, and Burke's motion for an order dismissing Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Electronic Order, dated October 28, 2022.)  For the reasons set forth below, the undersigned respectfully recommends that Defendants' motion be GRANTED.

## I.    FACTUAL AND RELEVENT PROCEDURAL BACKGROUND

### A.  Factual Background

Given Plaintiff's *pro se* status, the facts are drawn from Plaintiff's various filings including the Amended Complaint, Plaintiff's Reply Affidavit, Plaintiff's Supplemental Brief, filed February 17, 2022, and Plaintiff's Supplemental Brief, filed June 23, 2022.  (DE 8; DE 30; DE 51; DE 75.)  These facts are assumed true for the purposes of the motion to dismiss.

Plaintiff is currently incarcerated at Green Haven Correctional Facility.  (*See* DE 8.)  In or around 2009, Plaintiff was convicted for several counts of robbery, resulting from two separate trials.  (*See id.*)

***Plaintiff's Involvement with the Lucchese Crime Family***

Plaintiff was involved with Matthew Madonna ("Madonna"), head of the Lucchese crime family, his daughter Rosina Madonna ("Rosina") and the family's criminal enterprise.  (*Id.* at 6-7.)  Plaintiff alleges that he was introduced to several individuals that worked for the Suffolk County Police Department ("SCPD") through his connection with Madonna.  (*Id.*)

Beginning in 2006, Plaintiff was responsible for bringing members of the SCPD "things that came through Madonna" in return for favors.  (*Id.* at 8.)  For instance, Plaintiff would deliver to Lopez $5,000 and in return police cars would be diverted so Plaintiff could deliver cars for Madonna between "Suffolk Avenue and Carleton Avenue to Gershow Recycling in Medford."

(*Id.* at 8-9; DE 75 at 3.)  Plaintiff claims he also delivered money to other SCPD officer's houses located in Eagle Estates in Medford, Ronkonkoma, Miller Place, and near Portion Road.  (DE 8 at 8.)  On other occasions, Plaintiff would deliver money and guns to Alex Sanchez who lived in Eagle Estates in Medford.[2]  (*Id.* at 8-9.)  Plaintiff alleges that Alex Sanchez acted as a lookout when a Russian federal translator, Irina Malezhik ("Malezhik"), and Maureen Brainard-Barnes ("Brainard-Barnes"), were killed and dismembered in a pet cemetery in Middle Island.  (*Id.*)  Plaintiff alleges he would meet with officers such as Alex Sanchez at a car wash in Miller Place, which had a contract with the SCPD.  (*Id.* at 9.)

Plaintiff was also closely associated with Lopez and had an intimate relationship with Lopez's ex-wife.  (DE 75 at 2.)  It was during this period that Plaintiff was privy to information about Lopez, his family, personal property, business, and finances.  (*Id.*)

Plaintiff alleges on October 2, 2009, Madonna and other members of the Lucchese family were arrested for trafficking guns, paying a total of $22 million in bribes to the NYPD, and that Madonna was later convicted of murder, racketeering, and other charges.  (*Id.* at 10.)  According to Plaintiff, as a result of his involvement with the Lucchese family, Defendants falsely arrested, falsely imprisoned, committed negligence and fabricated and/or tampered with evidence to make it appear that Plaintiff had committed the robberies he was charged with, when he did not.  (*Id.* at 6-7.)

***Defendants' Alleged Connection to Madonna and the Lucchese Crime Family***

In 2007, Lopez informed Madonna and Plaintiff that they were under surveillance by the Manhattan District Attorney's Office and Sanchez.  (*Id.* at 9.)  Plaintiff contends that during this

---

[2] Plaintiff does not specify in his Complaint which Sanchez defendant he is referencing by this allegation. (*See* DE 8 at 8.)  However, Plaintiff later clarifies that Defendant Alex Sanchez is the Officer who lives in Eagle Estates.  (*See* DE 80.)

4

time there is a history of phone calls between Plaintiff and his girlfriend Alberta Cash ("Cash") and Lopez and Sanchez. (*Id.* at 9-10; DE 75 at 2.)

Plaintiff alleges that during years 2006 and 2007, he was forced by Madonna and police officers as well as officials of the SCPD to partake in illegal activity. (DE 8 at 12.) When Plaintiff refused to partake in such illegal activities, including the killing of an individual named Richie Taylor, a family member of a victim in a series of murders at Gilgo Beach, Madonna threatened to kill Plaintiff's girlfriend, Cash, and his family. (*Id.* at 12-13.) Plaintiff also alleges that Lopez, and other Defendants employed by the SCPD and District Attorneys' Office ("D.A.'s Office"), made threats to harm his family. (DE 75 at 1.) To prove the validity of his threats, Madonna forced Plaintiff to witness the murder of Malezhik. (*Id.* at 13.)

Plaintiff alleges that Spota refused to conduct an investigation into the underlying police involvement with the Lucchese operation because he did not want to expose the connection between Madonna and certain Suffolk County officials, including Burke, McPartland, judges, employees of the D.A.'s Office, police officers, and individuals name David Gross, Edward Walsh, and Robert Macedonio. (*Id.* at 10.) Plaintiff alleges these individuals participated in high-stake poker games run by Madonna. (*Id.*)

***Defendants Allegedly Leak Plaintiff's Case Information to the Lucchese Crime Family***

Plaintiff alleges that in 2008 to 2009, Plaintiff again received threats against Cash and his family from Madonna. (DE 8 at 10-11.) At the behest of the D.A.'s Office, investigators taped a conversation between Plaintiff and Rosina wherein Rosina explained that Lopez told her and Madonna about "what the Plaintiff was doing with the D.A.'s Office." (*Id.* at 11.) Plaintiff tried to bring to the Court's attention that the D.A.'s Office was giving information about the Plaintiff's case to Madonna, but Plaintiff alleges nothing was done. (*Id.*) Plaintiff claims his

suspicions that information was being leaked were later confirmed in October 2010 when Dito and White, investigators for Suffolk County, were arrested for giving out sensitive information to members of organized crime and when Spota publicly announced that information was somehow getting to members of organized crime. (*Id.* at 11-12.) When Plaintiff was later working with the Suffolk County Internal Affairs to investigate these matters, Spota and McPartland ordered the investigation to be closed. (*Id.* at 12.) Spota and McPartland were later convicted of obstruction of justice in a Civil Rights investigation. (*Id.*)

***Spota Fails to Investigate Defendants Involvement in the Gilgo Beach Killings***

Plaintiff alleges that in connection with a series of killings at Gilgo Beach, female victims were paid to participate in the transportation of illegal cargo from New York, New Jersey, and Long Island. (*Id.* at 13.) According to Plaintiff, SCPD officers and officials would oversee these transactions and receive kickbacks and benefits from the girls at sex parties held at Oak Beach. (*Id.* at 14.) Burke was claimed to have attended these sex parties at Oak Beach. (*Id.*)

Plaintiff alleges that Spota did not conduct an investigation into these matters because he did not want to expose that Sanchez was the lookout for the murder of Malezhik and that Burke and other SCPD officials had sexual relations with the victims found at Gilgo Beach.[3] (*Id.*)

***Defendants Withheld and/or Tampered with Evidence During Plaintiff's Criminal Trials***

Plaintiff alleges Horney conducted prosecutorial misconduct against Plaintiff for withholding crucial evidence during his underlying criminal trial. (DE 51.)

In 2008 and 2009, Plaintiff informed his trial counsel that he could not have committed the robberies he was accused of because he was under surveillance by the SCPD at the time of the robberies. (DE 8 at 15.) On March 1, 2016, Plaintiff discovered that although evidence of

---

[3] In a Reply Affidavit, Plaintiff alleges that State Senator Phil Boyle has stated that Burke might be connected to the killings at Gilgo Beach and that Spota conspired to cover up his crimes. (DE 30 at 2.)

this surveillance exists it was unavailable because the records were turned over to the FBI by SCPD and specifically by Sanchez, and the D.A's Office. (*Id.*; DE 51 at 2.)

In January and February of 2017, Plaintiff filed F.O.I.L requests to obtain the surveillance tapes. (DE 8 at 15.) Plaintiff's request was eventually approved as to grant Plaintiff access to surveillance records (not the tapes), but Plaintiff never received those documents. (*Id.*)

In January 2017, Plaintiff learned that Horney authorized the surveillance of Plaintiff. (*Id.*; DE 51 at 3.) Plaintiff alleges that the trial court and Horney denied Plaintiff from having Sanchez (the officer doing the surveillance) as a witness because Horney authorized Sanchez to place Plaintiff under surveillance and withheld this evidence from the defense. (DE 8 at 16.)

Plaintiff further alleges that during his first criminal trial, Plaintiff informed the Court of the recorded conversation between himself and Rosina, which evidenced that the D.A's Office was giving out sensitive information to Madonna. (DE 51 at 1-2.) The prosecutor stated she was not aware of any tape recordings. (*Id.* at 2.) Plaintiff alleges the prosecutor in his second trial produced the recorded conversation. (*Id.*) This tape supported Plaintiff's innocence, but it was wrongfully withheld. (*Id.*)

Plaintiff alleges that Horney knew he had an alibi for the time of the underlying crimes because of the surveillance but proceeded in the action against him. (DE 51 at 3.) Plaintiff alleges he was denied a fair trial because Horney presented witnesses that testified that Plaintiff committed the robberies, but those witnesses were told that Plaintiff was responsible for the robberies prior to trial. (*Id.* at 4-5.) In other words, that any in-court identification was the product of suggestion. (*Id.*) Plaintiff further alleges that he was improperly questioned about previous convictions and that Lopez gave inconsistent and false testimony. (*Id.* at 5; DE 75.)

Plaintiff alleges that Spota failed to investigate into this matter because he did not want to expose that the D.A's Office withheld this evidence which proved his innocence or the DA's Office and SCPD's connection to the Lucchese family.  (DE 8 at 16.)

As a result, Plaintiff alleges he suffered from post-traumatic stress disorder ("PTSD"), insomnia, migraines, dizziness, and extreme emotional distress. (DE 8 at 17.)  Plaintiff seeks $7 million in damages. (*Id.*)

### B.  Procedural Background

Plaintiff commenced this action on October 7, 2020.  (DE 1.)  On October 29, 2020, Plaintiff amended his complaint as of right ("Amended Complaint").   (DE 8.)  On July 15, 2021, Sanchez filed the instant motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (DE 18.)  Plaintiff submitted an opposition to Sanchez's motion, titled "Plaintiff's Reply Affidavit."  (DE 30.)  On December 30, 2021, Horney appeared in the action and requested to join the motion to dismiss.  (DE 38.)  On January 18, 2022, Judge Gujarati issued an order granting Horney's application to join the motion.  (Electronic Order, dated Jan. 18, 2022.) Judge Gujarati permitted Plaintiff leave to file a supplemental brief as to Horney and for Defendants to further submit reply.  (*Id.*)  Judge Gujarati administratively denied the motion to dismiss without prejudice to renew and instructed that if Defendants renew their motion, they only need to submit a letter stating their intent to renew.  (*Id.*)

On February 16, 2022, Plaintiff filed his supplemental brief as to Horney.  (DE 51.) Horney and Sanchez did not submit a reply.

On March 21, 2022, Horney and Sanchez filed a letter renewing their motion to dismiss Plaintiff's Amended Complaint.  (DE 53.)

On April 1, 2022, Lopez joined the action and requested to join the motion to dismiss. (DE 57.)  On April 8, 2022, the undersigned issued an order instructing any other defendants who wish to join in the motion to dismiss to do so on or before April 25, 2022.  (Electronic Order, dated April 8, 2022.)  Plaintiff was permitted to file a supplemental brief as to any of the added defendants.  (*Id.*)  Thereafter, the motion would be deemed fully submitted.  (*Id.*)  The undersigned modified this schedule at a status conference on June 3, 2022, as follows: the County was directed to serve Plaintiff with all papers filed in support of Defendants Sanchez, Horney, and Lopez's motion to dismiss on or before June 6, 2022; Plaintiff was to file any opposition on or before June 24, 2022; and movants were to file any reply on or before July 8, 2022.  (DE 61.)  Thereafter, the motion would be deemed fully submitted.  (*Id.*)

On June 7, 2022, Burke joined the action and stated his intent to join in the motion to dismiss without seeking leave of court and without providing any justification for disregarding the court-imposed deadline.  (DE 63, DE 64.)  On June 16, 2022, the Court issued an Order to Show Cause instructing Burke to file a letter showing good cause for the Court to permit Defendant Burke to join in on the motion to dismiss past the Courts previously ordered deadline. (Electronic Order, dated June 16, 2022.)  Burke responded by letter on June 17, 2022.  (DE 67.)

Plaintiff filed a motion to further amend his pleading on June 21, 2022, which he later elected to withdraw.  (DE 71; DE 83.)  Plaintiff also further filed an opposition to Defendants' motion to dismiss on June 21, 2022.  (DE 71; DE 73.)  Plaintiff filed another supplemental brief, opposing Defendants' motion to dismiss on June 23, 2022.  (DE 75.)  Defendants filed a reply on June 27, 2022.  (DE 76.)

On October 28, 2022, the fully submitted motion to dismiss was referred to the undersigned for report and recommendation.

## I.  <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  More is required.

The above standards apply to *pro se* complaints as well, but in a less rigid manner.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes and citations omitted).  When considering a *pro se* complaint, the Court must interpret the pleading to raise the strongest claim plausibly suggested by the allegations.  *Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-00752 (RRM) (LB), 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011).  "However, mere conclusions of law or unwarranted deductions need not be accepted." *Id.* (internal quotes omitted.)  It is against this backdrop that the undersigned reviews the motions.

## II.    <u>DISCUSSION</u>

Upon review of Plaintiff's Amended Complaint and accompanying submissions, the Court construes Plaintiff's Amended Complaint as asserting claims for false arrest, false imprisonment, negligence, malicious prosecution, and violations of his due process rights under the Fourth and Fourteenth Amendments.[4]  (DE 8; DE 30; DE 51; 75.)

Defendants argue that all Plaintiff's claims should be dismissed for improperly challenging the validity of his underlying criminal convictions under the Supreme Court's ruling in *Heck v. Humphrey* (512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).  (DE 18-1.)  Defendants further argue Plaintiff's claims for false arrest and false imprisonment are barred by the statute of limitations, and that his claims for false arrest, false imprisonment, and malicious prosecution further warrant dismissal for failure to state a claim.  (*Id.*)  Each argument is addressed in turn below.

### A.  Claims Barred by *Heck v. Humphrey*

Defendants argue that Gross may not use this civil lawsuit to collaterally attack his underlying criminal convictions.  (DE 18-1 at 2.)  Defendants contend that because Gross's convictions have not been invalidated, he cannot proceed with this section 1983 action to challenge his arrest and prosecution.  (*Id.*)  Gross does not address this argument in his submissions.

---

[4] Plaintiff states that he is asserting claims for "liability, post-traumatic stress disorder, and sleep insomnia." (DE 8; DE 30.)  The Court considered whether these allegations could be construed as allegations of intention infliction of emotional distress ("IIED") or negligent infliction of emotional distress ("NIED").  However, even in interpreting the pleadings to raise the strongest claim plausibly suggested by the allegations, the Court construes these "claims" to be merely a recitation of Plaintiff's damages.  Plaintiff does not otherwise assert allegations which support claims for IIED or NIED.  Further, he lists post-traumatic stress disorder and insomnia as his injuries, and attributes those injuries to "murders & dismemberments." (DE 8 at 17.)  Based on Plaintiff's own allegations, the alleged "murders & dismemberments" Plaintiff witnessed were at the hands of the Lucchese family, not any of the named defendants.

"When a claim for damages under § 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated." *Kogut v. Cnty. of Nassau*, No. 06-CV-6695(JS)(WDW), 2009 WL 5033937, at *5 (E.D.N.Y. Dec. 11, 2009) (citing *Heck*, 512 U.S. at 487).  In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87.

"A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.*  A plaintiff "must allege that his arrest and detention has been reversed, expunged, or declared invalid, for a civil action before this Court is not the appropriate vehicle to challenge, in the first instance, the validity of that action." *Jefferson v. Chicara*, No. 13-CV-5649 JS ARL, 2015 WL 1439932, at *5 (E.D.N.Y. Mar. 26, 2015).  This is known as the "favorable-termination rule."  *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 454 (E.D.N.Y. 2018).

Here, Plaintiff has asserted claims for false arrest, false imprisonment, negligence, malicious prosecution, and due process violations.  (DE 8.)  As Plaintiff describes it, the "gravamen of [his] claims concern the fairness and legality of the proceedings leading to his criminal conviction. . ."  (DE 73 at 1.)  Specifically, Plaintiff alleges that Defendants, "as a corrupted team," fabricated and tampered with evidence so that he be convicted and deprived due process of law.  (DE 8 at 5.)  Plaintiff alleges that employees of the SCPD and Suffolk

County Officials created circumstances so it would appear as if Plaintiff committed the crimes he was convicted of, when he had not.  (*Id.* at 6.)

Plaintiff has not received a favorable termination; his conviction or sentence was not reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  *See Smalls v. City of New York*, 181 F. Supp. 3d 178, 188 (E.D.N.Y. 2016) ("New York law broadly considers any termination of a criminal proceeding to have been terminated favorably when there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense") (internal quotes omitted).  Rather, Plaintiff's conviction was upheld following Plaintiff's attempts at habeas corpus review and state-court appeals.  (DE 73 at 1.)

Because Plaintiff's claims of malicious prosecution and due process violations necessarily bear on the validity of his underlying criminal convictions, they require dismissal under *Heck's* favorable termination rule.  *See Martinez v. DeMarco*, No. 13-CV-4209 (JFB) (AKT), 2018 WL 1115150, at *1 (E.D.N.Y. Feb. 26, 2018) (dismissing Plaintiff's § 1983 claims of, *inter alia*, malicious prosecution as barred by *Heck*); *Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotations omitted); *see also Duamutef v. Morris*, 956 F. Supp. 1112, 1115–16 (S.D.N.Y. 1997) ("The gravamen of plaintiff's complaint is that he was 'framed' for a

murder he did not commit in retaliation for his political involvements. . .As required by *Heck,* these claims will be dismissed").

The same cannot be said for Plaintiff's remaining claims for false arrest, false imprisonment, and negligence.  While Plaintiff's claims for false arrest and false imprisonment fail for other reasons (*see* Section II.A-B, *infra*), as Plaintiff has alleged them the Court cannot say for certainty that "*only* the evidence for conviction was obtained pursuant to [Plaintiff's] arrest such that exclusion of that evidence from Plaintiff's criminal proceedings would bear on the validity of his conviction." *See id.* (quotes omitted) (emphasis in original); *see also Fifield v. Barrancotta*, 353 F. App'x 479, 480–81 (2d Cir. 2009) ("Fourth Amendment claims for unlawful arrest . . . do not ordinarily fall within the *Heck* rule, since a finding for the plaintiff would not necessarily demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, at least unless the conviction was dependent on evidence obtained as a result of the arrest") (internal quotes and cites omitted.)  Accordingly, dismissal of Plaintiff's false arrest and false imprisonment claims is not warranted on this ground.

Similarly, as it relates to Plaintiff's negligence claim, success on this state-law tort claim does not demonstrate the invalidity of Plaintiff's underlying criminal conviction.  *See Williams v. Hartford Police Dep't*, No. 3:15-CV-933 (AWT), 2016 WL 11659354, at *3 (D. Conn. June 17, 2016) ("Success on the remaining claims, i.e., a federal retaliation claim and various state law torts, also would not demonstrate the invalidity of the plaintiff's conviction or sentence"). Nonetheless, given the dismissal of Plaintiff's federal claims, it is respectfully recommended that the Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Dudley v. Singas*, No. 16-CV-1548(JMA)(AYS), 2017 WL 5312131, at *3 (E.D.N.Y. Nov. 13, 2017) (dismissing plaintiff's federal claims under *Heck* and declining to exercise

supplemental jurisdiction over plaintiff's state-law negligence claim); *Rosato v. New York Cnty. Dist. Attorney's Off.*, No. 09 CIV. 3742 (DLC), 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14, 2009) (dismissing plaintiff's malicious prosecution and due process claims under *Heck* and declining to exercise supplemental jurisdiction over plaintiff's state-law claims).[5]

Accordingly, it is respectfully recommended that Plaintiff's claims sounding in malicious prosecution and due process violations be dismissed as barred by *Heck*'s favorable termination rule.

**B.  Plaintiff's False Arrest and False Imprisonment Claims are Barred by the Statute of Limitations**

Defendants argue that because this action was not commenced for more than three years following Gross's underlying arrest, his claims for false arrest and false imprisonment are barred by the statute of limitations.  (DE 18-1 at 3.)

In response, Plaintiff argues that this action is timely insofar as it has been brought within one year from the conviction of Spota.  (DE 30 at 2.)

"Under New York law, the statute of limitations for § 1983 claims premised on torts such as false arrest or false imprisonment is three years."  *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005).  For these claims, "the statue of limitations begins to run 'when the alleged false imprisonment ends.'"  *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 388–89, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)).  A false imprisonment ends when the victim "becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges."  *Id.*

---

[5] In any event, Plaintiff's negligence claim warrants dismissal because "New York does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution."  *See Dollard v. City of New York*, 408 F. Supp. 3d 231, 238 (E.D.N.Y. 2019).  "To the extent that a claim for negligence. . . is based upon injury incident to an arrest, a plaintiff must resort to the traditional tort remedies of false arrest, false imprisonment, and malicious prosecution."  *Id.*

Defendants assert that the accrual of Plaintiff's false arrest and false imprisonment claim began upon Plaintiff's arrest. (DE 18-1 at 2-3.) Defendants recognize that Plaintiff's date of arrest is not contained in the Amended Complaint. (*Id.* at 2.) Nonetheless, the Court finds the date of Plaintiff's arrest to be insignificant because the accrual of Plaintiff's claim began when he became held pursuant to legal process, or in this case, when Plaintiff was arraigned. *See McDaniel v. City of New York*, 585 F. Supp. 3d 503, 514 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19-CIV-11265 (AT) (RWL), 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022) (finding the statute of limitations for *pro se* plaintiff's claim for false arrest began to accrue upon the date of arraignment).

Just like Plaintiff's date of arrest, the date of Plaintiff's arraignment is not stated in the record. However, Plaintiff states throughout his Amended Complaint and subsequent filings that he was engaged in his two criminal trials within the years of 2008 and 2009. (*See* DE 8 at 7, 10, 12, 15; DE 51 at 1-2 ("That in 2008-2009, in Plaintiff's first trial. . . That in 2008-2009, in Plaintiff's second trial. . . ). Further, the Court takes judicial notice of the fact that Plaintiff was sentenced in both his underlying criminal proceedings in 2009. *Gross v. Royce*, No. 20-CV-03037 (DG), 2021 WL 2291839, at *1 (E.D.N.Y. June 4, 2021). ("On March 24, 2009, Petitioner James Gross was sentenced after a trial to twenty-five years to life on one count of robbery in the second degree . . . On July 24, 2009, Petitioner was sentenced after a separate trial on one count of robbery in the first degree, two counts of robbery in the second degree, and three counts of robbery in the third degree").

This action was commenced on October 7, 2020. Even the most generous and liberal reading of Plaintiff's allegations makes it a legal and factual impossibility that Plaintiff was arraigned in his underlying criminal proceedings within three years of October 7, 2020. The only

16

logical conclusion which can be gleaned from the record is that Plaintiff was arraigned before his criminal convictions in 2009.  Thus, the three-year statue of limitations had undoubtedly run prior to Plaintiff's commencement of this action.

Accordingly, it is respectfully recommended that Plaintiff's claim for false arrest and false imprisonment be dismissed as untimely.

### C.  Plaintiff Fails to State a Claim for False Arrest and False Imprisonment

If the District Judge disagrees with the undersigned's conclusion that Plaintiff's claims for false arrest and false imprisonment are barred by the statute of limitations, dismissal of these claims is nevertheless warranted because Plaintiff's Amended Complaint fails to state a claim for these alleged offenses.

Defendants argue that Plaintiff's claims for false arrest and false imprisonment fail because Plaintiff's convictions conclusively establish the existence of probable cause which renders him unable to prove his section 1983 false arrest and false imprisonment claims.  (DE 18-1.)  Plaintiff does not respond to this argument.

Under New York law, claims for false arrest and false imprisonment are the same, and the elements for both are the same under § 1983.  *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011); *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013).  To establish a claim for false arrest, a plaintiff must allege that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.  *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 377 (E.D.N.Y. 2013).  The existence of probable cause is a complete defense to a claim for false arrest/false imprisonment.  *Id.*  "'[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause' sufficient

to preclude a false arrest claim. *Poole v. Hawkins*, No. 18-CV-443 (MKB), 2021 WL 695119, at *6 (E.D.N.Y. Feb. 23, 2021) (quoting *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986)).

Here, it is undisputed that Plaintiff has been convicted. (*See* DE 8; DE 180-1 at 4; *see also Gross*, 2021 WL 2291839, at *1. Plaintiff's convictions necessarily establish a finding of probable cause. Accordingly, Plaintiff's claims for false arrest and false imprisonment fail. *See Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 249 (E.D.N.Y. 2017) ("A person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest").

Accordingly, it is respectfully recommended that Plaintiff's claims for false arrest and false imprisonment be dismissed.

### D. Plaintiff Fails to State a Claim for Malicious Prosecution

If the Court finds that Plaintiff's malicious prosecution claim does not necessarily seek to invalidate his underlying criminal convictions and are not otherwise barred under *Heck*, Plaintiff's malicious prosecution claim should be dismissed because Plaintiff fails to adequately state a claim.

Defendants argue that Plaintiff's malicious prosecution claim should be dismissed because the underlying criminal proceedings have not been terminated in his favor, thus precluding his malicious prosecution claim. (DE 18-1 at 4-5.) Plaintiff does not offer a response.

To establish a claim for malicious prosecution under section 1983 and New York law, a plaintiff must allege (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015). "A Section 1983 malicious prosecution claim also

18

requires a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Buari v. City of New York*, 530 F. Supp. 3d 356, 383 (S.D.N.Y. 2021) (quotes omitted).

Until this past year, to meet the favorable termination element, a plaintiff in the Second Circuit needed to show some "affirmative indication of innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018), *abrogated by Thompson v. Clark*, 212 L. Ed. 2d 382, 142 S. Ct. 1332 (2022). However, the Supreme Court has rejected Second Circuit precedent on the "favorable termination" element and held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, ––– U.S. –––, 142 S. Ct. 1332, 1341, 212 L.Ed.2d 382, 393 (2022). Rather, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." (*Id.*)

Plaintiff cannot meet even the lowered *Thompson* bar here. Because the criminal proceedings against Plaintiff did end with convictions, it cannot be found that the proceedings were terminated in his favor. As a result, Plaintiff cannot maintain an action for malicious prosecution.

Accordingly, it is respectfully recommended that Plaintiff's claim for malicious prosecution be dismissed.

### E.  Plaintiff's Ability to Further Amend his Claims

"A *pro se* complaint is to be read liberally. Certainly, the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999). However, even *pro se* plaintiffs

should be denied leave to replead where it is clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile. *Taylor v. Keen*, No. 11-CV-5221 JFB ARL, 2012 WL 3835383, at *5 (E.D.N.Y. Sept. 5, 2012).

Here, there does not seem to be any further facts or legal theories Plaintiff could assert if given leave to amend, which could cure the deficiencies of his current claims. Plaintiff's malicious prosecution and due process claims will continue to be barred under *Heck*'s favorable termination rule, his false arrest and false imprisonment claims will continue to be barred by the statute of limitations, and in any event, Plaintiff's conviction will prevent him from stating a claim for false arrest, false imprisonment, and malicious prosecution. For these reasons, it is respectfully recommended that the Court refrain from granting any further leave to replead beyond the two pleadings to date. *See Cuoco*, 222 F.3d at 112 ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied").

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends Defendants Sanchez, Lopez, Horney, and Burke's motion for an order dismissing Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) be granted, without leave to replead.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Defendants Sanchez, Lopez, Horney, and Burke. Defendants are directed to confer and serve one copy of this Report and Recommendation on Plaintiff and file proof of service on ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V

2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision") (citation omitted); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        February 1, 2023

                              RESPECTFULLY RECOMMENDED,

                              /s/ ***James M. Wicks***
                              JAMES M. WICKS
                              United States Magistrate Judge