UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES GROSS,

                    Plaintiff,

                                                        **REPORT AND**
                                                        **RECOMMENDATION**
          -against-                                     20-CV-4873 (DG) (JMW)

MICHAEL SANCHEZ *et al*,

                    Defendants.
------------------------------------------------------------------X

**A P P E A R A N C E S :**

James Gross
09-A-1719
**Green Haven Correctional Facility**
P.O Box 4000
Stormville, NY 12582
*Plaintiff Pro Se*

Arlene S. Zwilling, Esq.
**Suffolk County Attorney's Office**
P.O. Box 6100
H. Lee Dennison Building-Fifth Floor
100 Veterans Memorial Highway
Hauppauge, NY 11788-0099
*Attorney for Defendant Alex Sanchez*

Joya C. Sonnenfeldt, Esq.
**N.Y.S. Office of the Attorney General, Litigation Bureau**
28 Liberty Street
New York, NY 10005
*Attorney for Defendant Hinrichs*

**Kyle O Wood, Esq.**
200 Vanderbilt Motor Parkway
Hauppauge, NY 11788
*Attorney for Defendant Spota*

**WICKS,** Magistrate Judge:

Plaintiff commenced this civil action shortly after his habeas corpus proceeding[1] in October 2020, seeking damages under 42 U.S.C. § 1983 against Defendants Michael Sanchez ("Sanchez"), Eugene Lopez ("Lopez"), Officer Sanchez ("Alex Sanchez"), Deidre Horney ("Horney"), former judge of the Suffolk County Court C. Randall Hinrichs ("Hinrichs"), John White ("White"), Robert Dito ("Dito"), Thomas Spota, James Burke ("Burke"), Christopher McPartland ("McPartland"), and Thomas Spota III (together with Thomas Spota as "Spota") violated his constitutional rights during Plaintiff's state criminal prosecutions.[2] (ECF No. 8.) Specifically, he asserts claims of false arrest, false imprisonment, negligence, malicious prosecution, and due process violations, all in violation of his Fourth and Fourteenth Amendment constitutional rights. (*Id.*)

Before the Court on referral from Honorable Diane Gujarati are Defendants Sanchez, Hinrichs's, and Spota's motions to dismiss Plaintiff's Amended Complaint. (Electronic Order dated July 27, 2023.) These motions seek the same relief sought in the terminated Defendants' motions to dismiss. (*See* ECF Nos. 53 and 57.) In addition to asserting various doctrines of immunity, Defendants now argue that the Amended Complaint should be dismissed for the same reasons outlined in the undersigned's prior R&R. For the reasons set forth below, the undersigned respectfully recommends that Defendants' motion be granted.

---

[1] Plaintiff originally sought relief in June 2020 by Writ of Habeas Corpus petition challenging his March and July 2009 state convictions for several counts of robbery. *Gross v. Royce*, No. 20-CV-03037 (DG), 2021 WL 2291839, at *1 (E.D.N.Y. June 4, 2021). In that case, Plaintiff asserted claims of ineffective assistance of counsel, due process, and actual innocence. *Id.* These claims were ultimately dismissed. *Id.*

[2] In its prior Report and Recommendation ("R&R"), the Court recommended granting Defendants Michael Sanchez, Lopez, Horney, and Burke's motion for an order dismissing Plaintiff's Amended Complaint. (ECF No. 102.) Judge Gujarati subsequently adopted that R&R. (*See* Electronic Order dated Mar. 20, 2023.) Thus, the only remaining appearing Defendants are Hinrichs, Alex Sanchez, and Spota.

## I.    FACTUAL AND RELEVANT PROCEDURAL BACKGROUND

### A.  Factual Background

Given Plaintiff's *pro se* status, the facts are drawn from Plaintiff's various filings including the Amended Complaint, Plaintiff's supplemental brief, Plaintiff's oppositions to Defendants' briefs, and Plaintiff's letter submission of "credible and compelling evidence." (ECF Nos. 8, 51, 118, 124, and 127.)  These facts are assumed true for the purposes of the motion to dismiss.

In or around 2009, Plaintiff was convicted on several counts of robbery, resulting from two separate trials.  (*See* ECF No. 8.)  He is currently incarcerated at the Green Haven Correctional Facility.  (*Id.*)

***Plaintiff's Connection with the Suffolk County Officials, Including Defendant Sanchez***

Plaintiff was involved in a past relationship with Matthew Madonna's daughter.  (ECF No. 118 at 3.)  According to Plaintiff, Matthew Madonna was "the highest ranking member of the Lucchese family."  (ECF No. 8 at 7.)  Plaintiff alleges there was a connection between Detective Lopez, the lead detective on his case, other Suffolk County Police Department ("SCPD") officials, and Madonna.  (*Id.*)  He claims he was introduced to many individuals that worked for SCPD.  (*Id.*)  In 2006, Plaintiff was responsible for bringing SCPD and Suffolk County District Attorney's Office ("D.A.'s Office") officials "things that came through Mr. Madonna in return for favors."  (*Id.* at 8.)  Madonna and Plaintiff even paid Detective Lopez $5,000 a month to have vehicles diverted when Plaintiff would complete assignments for Madonna.  (*Id.*)  In other words, because Lopez was receiving these monies, he would overlook Madonna's wrongdoings.

In addition, Plaintiff would also deliver cash "and other things" to SCPD officials' houses and at car washes.  (*Id.* at 8-9.)  Plaintiff has also demonstrated his purported knowledge of these officials' houses by providing the court with maps and blueprints.  (*Id.* at 8.)  With respect to Officer Sanchez, Plaintiff avers that on "numerous" occasions, he would "deliver money and guns" "on [] numerous [occasions]."  (*Id.*)  To support his allegation about Sanchez, Plaintiff states that Sanchez lived in Eagle Estates and drove a yellow sports car.  (*Id.*)  Sanchez, Plaintiff says, was the lookout for Irina Malezhik's (a Russian translator) murder that occurred on October 19, 2007.  (*Id.* at 8-9.)

With Lopez's help, Madonna "created circumstances" that appear as though Plaintiff had the alleged committed crimes.  (*Id.* at 7-8.)  Specifically, he states that Defendants plotted against him by fabricating stories and tampering with evidence, which ultimately led to his incarceration.  (*Id.* at 5.)

### Defendants' Involvement in the Gilgo Beach Crimes

Plaintiff states that the victims of the Gilgo Beach crimes were paid to transport illegal cars and SCPD officials oversaw these transactions and received kickbacks in exchange and they participated in "sex parties."  (ECF No. 8 at 13-14.)  This is evident from former Defendant Burke's pleading guilty to a civil rights violation for assaulting a suspect after the suspect "st[ole] a stash of porn and sex toys" from Burke's vehicle.  (*Id.* at 14.)  Plaintiff also says there is plenty of evidence that Burke joined in on these sexual activities with prostitutes.  (ECF No. 127 at 5.)

### Threats to Plaintiff

In 2008 to 2009, Plaintiff told the court that from 2006 to 2007, he was forced to participate in illegal acts by Madonna and Suffolk County officials.  (ECF No. 8 at 12.)  When

Plaintiff refused to partake in killing Richie Taylor, a family member of a victim in a series of murders at Gilgo Beach, Madonna threatened to kill Plaintiff's girlfriend and his family. (*Id.* at 13.) To further intimidate Plaintiff, on October 19, 2007, "Plaintiff was forced to witness the shooting and dismemberment of Ms. Irina Malezhik in a pet cemetery." (*Id.*)

Relatedly, Plaintiff's alleges that officers testified in a related case, *United States v. McPartland*, 81 F.4th 101 (2d Cir. 2023), that they only participated in the crimes to conceal Burke's prior misconduct "out of fear of retaliation against their [families]." (ECF No. 127 at 1-2, 4.)

### Case Sensitive Information Leaked to Defendants

From 2008 to 2009, Plaintiff told counsel and the court that he had to contact the D.A.'s Office because Madonna threatened his girlfriend. (ECF No. 8 at 10-11.) Subsequently, the D.A.'s Office investigators recorded a conversation between Plaintiff and Madonna's daughter. (*Id.* at 11.) In that conversation, Madonna's daughter told Plaintiff that Lopez told Madonna that Plaintiff had spoken with the D.A.'s Office. (*Id.*)

Plaintiff tried to bring to the Court's attention that the D.A.'s Office was giving information about the Plaintiff's case to Madonna, but Plaintiff alleges nothing was done. (*Id.*) Plaintiff claims his suspicions that information was being leaked were later confirmed when on October 11, 2010, Dito and White, two D.A.'s Office investigators, were arrested for giving out sensitive information to organized crime gang members around the time that Plaintiff brought this information to the court's attention. (*Id.*) And on this same date, Spota admitted that he did not know how organized crime members were getting confidential office information. (*Id.* at 12.)

***Bringing Other Pieces of Evidence to the Court's Attention to No Avail***

Plaintiff attempted to show a call log demonstrating the history of communications between Lopez, Sanchez and Plaintiff before and after Plaintiff was arrested.  (ECF No. 8 at 9.) However, the state court judge said this was "irrelevant" and it was excluded from evidence.

Plaintiff states that had the court conducted an adequate investigation, it would have recognized that Madonna delivered drugs in car trunks in return for money.  (*Id*. at 9-10.)  He implies that this is evinced by the fact that on October 2, 2009, Madonna and 49 other Lucchese crime family members were arrested for trafficking guns and paying thousands in bribes to police officials.  (*Id*. at 10.)  Further, that on November 15, 2019, Madonna and other mafia members were convicted of, *inter alia*, murder and racketeering in federal court.  (*Id*. at 10.)

***Defendants Withheld and/or Tampered with Evidence During Plaintiff's Criminal Trials***

In 2008 and 2009, Plaintiff informed his trial counsel that he could not have committed the robberies he was accused of because he was under surveillance by the SCPD at the time of the robberies.  (ECF No. 8 at 15.)  On March 1, 2016, Plaintiff discovered that although evidence of this surveillance exists, it was unavailable because the records were turned over to the FBI by SCPD and specifically by Sanchez and the D.A's Office.  (*Id.*)

In January and February of 2017, Plaintiff filed Freedom of Information Law requests to obtain the surveillance tapes.  (*Id*.)  Plaintiff's request was eventually granted to allow him access to surveillance records (not the tapes), although Plaintiff never received those documents. (*Id.*)

Plaintiff alleges that the trial court and Horney denied Plaintiff from having Sanchez (the officer doing the surveillance) as a witness because Horney authorized Sanchez to place Plaintiff under surveillance and withheld this evidence from the defense.  (*Id.* at 16.)

Plaintiff further alleges that during his first criminal trial, Plaintiff informed the court of the recorded conversation between himself and Rosina, which evidenced that the D.A's Office was giving out sensitive information to Madonna. (ECF No. 51 at 1-2.) The prosecutor stated she was unaware of any tape recordings. (*Id.* at 2.) Plaintiff alleges the prosecutor, however, later produced the recorded conversation in his second trial. (*Id.*) This tape supported Plaintiff's innocence, but was wrongfully withheld. (*Id.*)

Plaintiff alleges he was denied a fair trial because former Defendant Horney presented witnesses that testified that Plaintiff committed the robberies, but those witnesses were told that Plaintiff was responsible for the robberies prior to trial. (*Id.* at 4-5.) In other words, any in-court identification was the product of suggestion. (*Id.*) Plaintiff further alleges that he was improperly questioned about previous convictions and that Lopez gave inconsistent and false testimony. (*Id.* at 5.)

### *Defendant District Attorney Spota's Involvement*

Defendant Spota served as the Suffolk County District Attorney from 2002 to 2017. From 2008 to 2009, Plaintiff contacted Suffolk County internal affairs and they interviewed Plaintiff for over a year. (ECF No. 8 at 12.) However, Spota and Defendant McPartland (Internal Affairs Bureau Chief) ordered the investigation to be closed. (*Id.*) He says this was brought to light when on December 17, 2019, Spota and McPartland were convicted of "obstructing of justice of a federal civil rights investigation." (*Id.*)

Spota specifically refused to conduct an investigation into any of these matters because he did not want to expose:

1. "that Officer Sanchez was the look out on October 19, 2007 when Ms. Irina Malezhik was killed and dismembered, and that James Burke (Suffolk County Police Chief) and other officials were having sexual relations with all the prostitutes that was discovered on Gilgo Beach." (*Id*. at 14);

7

2. "the [connection] between Matthew Madonna and the Suffolk County Officials," including judges.  (*Id*. at 10); and

3. that Spota's office withheld surveillance from the defense which contained evidence of Plaintiff's innocence.  (*Id*. at 17.)

### *Defendant Judge Hinrichs's Involvement*

There are no allegations in the Complaint against Judge Hinrichs.  Rather, only in Plaintiff's opposition to the moving papers do Plaintiff's allegations against Defendant Hinrichs appear for the first time.  Hinrichs presided over Plaintiff's prior criminal trials.  He alleges that Hinrichs violated Plaintiff's Fourth and Fourteenth amendments "when he refused to give the jury an instruction on [the a]ffirmative defense of Duress, …refusing to explore Detective Lopez's disciplinary record[]s, for not allowing Plaintiff's phone record[]s into evidence, and allowing a witness for the Prosecution to take the stand knowing that he was going to lie under oath."  (ECF No. 118 at 8.)  He says the jury instruction for duress would have acknowledged that Plaintiff was forced to partake in illegal acts with government officials.  (*Id*.)  And with respect to the lying witness—Plaintiff submits that Richie Taylor stated in court that "he would have offered testimony against anyone to get out from under [a] potential sentence."  (*Id*. at 9.)  And finally, he claims that Hinrichs violated his constitutional rights when he disregarded Plaintiff's request to be represented by a different attorney. (*Id*.)

As a result of all of Defendants' conduct as described above, Plaintiff alleges he suffered from post-traumatic stress disorder ("PTSD"), insomnia, migraines, dizziness, and extreme emotional distress. (ECF No. 8 at 17.)  Plaintiff seeks $7 million in damages.  (*Id.*)

### B.  Procedural Background

Plaintiff commenced this action on October 7, 2020.  (ECF No. 1.)  On October 29, 2020, Plaintiff amended his complaint as of right ("Amended Complaint").  (ECF No. 8.)

On February 1, 2023, the undersigned recommended granting Defendants Sanchez, Lopez, Horney, and Burke's motion to dismiss, without leave to replead.  (ECF No. 102.)  The undersigned found that the Plaintiffs' claims were: (1) barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) his false arrest and false imprisonment claims were barred by the statute of limitations; (3) he relatedly failed to state a claim for false arrest and false imprisonment; and (4) he failed to state a claim for malicious prosecution.  (*Id.*)  The undersigned also recommended to the Court that it "refrain from granting any further leave to replead."  (*Id.* at 20.)  This R&R was adopted by Judge Gujarati in its entirety.  (Electronic Order dated Mar. 20, 2023.)

The Court then directed Plaintiff to serve all remaining defendants in the case. (Electronic Order dated Apr. 4, 2023.)  Following the adoption of the R&R, Alex Sanchez appeared in the case.  On June 27, 2023, Defendant Alex Sanchez filed his motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 110.)

Defendant Hinrichs received a copy of the summons and amended complaint on May 25, 2023.[3]  (ECF No. 111-1 at 8.)  With the Court's approval, Defendant Hinrichs then promptly filed his motion based on Plaintiff's failure to state a claim and for lack of jurisdiction.  (ECF No. 111.)

Defendant Spota also filed a motion for leave to file his anticipated motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 117), which the undersigned granted.  (Electronic Order dated Aug. 16, 2023.)  The motion was fully briefed on October 4, 2023.  (ECF No. 126.)

Judge Gujarati referred all three of Defendants' motions to the undersigned on July 27, 2023.  (Electronic Order dated July 27, 2023.)

---

[3] To the extent that Plaintiff argues that Defendant Hinrichs's submission is untimely, the undersigned disagrees.  Hinrichs filed his pre-motion letter within 21 days of May 25, 2023—the date he received the summons and operative complaint.  (ECF No. 113); *see* Fed. R. Civ. P. 12 (stating that answers are due within 21 days after service of the summons and complaint).

In his motion, Defendant Alex Sanchez asserts the same grounds for dismissal as advanced by the co-defendants in the prior motion, namely that (1) Plaintiff's outstanding convictions bar him from proceeding with his claims; (2) his § 1983 claims concerning false arrest and false imprisonment are barred by the statute of limitations and that he cannot establish these claims; and (3) his convictions preclude his § 1983 malicious prosecution claim.  (ECF No. 110.)

Defendant Hinrichs argues that his motion to dismiss should be granted because: (1) the claims are based on acts in his official capacity, which are barred by the Eleventh Amendment; (2) claims based on individual capacity are barred by absolute judicial immunity; (3) all of Plaintiffs' claims against Hinrichs should be dismissed here as they were in this Court's adopted R&R (ECF No. 102), and (4) that his motion to dismiss is timely.  (ECF Nos. 111 and 119.)

Defendant Spota adopts similar arguments as the other Defendants, citing the same arguments as Alex Sanchez (ECF No. 126-1) and also claiming that any causes of action are barred based on sovereign and prosecutorial immunity as well as qualified immunity.  (*Id*.)

Plaintiff files largely the same opposition for all three motions to dismiss.  (ECF Nos. 118, 124, and 126-3.)  He claims that he was unable to consent to Defendants Sanchez's and Hinrichs's briefing schedules and that neither Defendant answered the summons and should not be allowed to file this motion now.  (*Id*.)  As to Defendant Hinrichs specifically, Plaintiff claims that he "concealed evidence from the defense and the jury, [and] failed to give the jury an instruction on the affirmative defense of Duress and committed unlawful Acts."  (ECF No. 118 at 3.)  He also emphasizes the same allegations present in the Amended Complaint, in his opposition: (1) that Spota closed an investigation to prevent his office's exposure in the alleged crimes and Spota was later convicted of obstruction of justice in a different case; (2) that

10

Defendant Alex Sanchez was involved in the crimes as the lookout for Malezhik and Barnes were killed; and (3) the prosecution withheld evidence from him.  (*Id*. at 4-7.)  He further requests leave to amend the complaint as his defect can be cured and amendment would not be futile.  (*Id*. at 9-10.)  Finally, he states that his claims are *not* barred by the statute of limitations since he brought his claims within one year of Spota's and McPartland's convictions.  (*Id*. at 10-11.)

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  More is required.

The above standards apply to *pro se* complaints as well, but in a less rigid manner.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers.") (internal quotes and citations omitted).

When considering a *pro se* complaint, the Court must interpret the pleading to raise the strongest

claim plausibly suggested by the allegations. *Rosen v. N. Shore Towers Apartments, Inc.*, No.

11-CV-00752 (RRM) (LB), 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011). "However,

mere conclusions of law or unwarranted deductions need not be accepted." *Id.* (internal quotes

omitted.) It is against this backdrop that the undersigned reviews Defendants' motions.

### III.   DISCUSSION

Plaintiff's Amended Complaint asserts claims of false arrest, false imprisonment,

negligence, malicious prosecution, and violations of his due process rights under the Fourth and

Fourteenth Amendments. (ECF Nos. 8, 51, 118, and 124.) In turn, Defendants argue Plaintiff's

claims for false arrest and false imprisonment are barred by the statute of limitations, and that his

claims for false arrest, false imprisonment, and malicious prosecution further warrant dismissal

for failure to state a claim. (ECF Nos. 110, 111, and 126-1.) Defendants Hinrichs and Spota

also argue that the claims against them are barred pursuant to various immunity doctrines. (ECF

Nos. 111-1 and 126-1.) Each argument is addressed below.

A.  **Claims Barred by *Heck v. Humphrey***

Defendants argue that Plaintiff may not use this civil lawsuit to collaterally attack his underlying criminal convictions.  (ECF No. 110-1 at 2.)  They contend that because Plaintiff's convictions have not been invalidated, he cannot proceed with this § 1983 action to challenge his arrest and prosecution.  (*Id.*; ECF No. 126-1 at 10.)  Plaintiff does not address these arguments in his submissions.

"When a claim for damages under § 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated." *Kogut v. Cnty. of Nassau*, No. 06-CV-6695 (JS) (WDW), 2009 WL 5033937, at *5 (E.D.N.Y. Dec. 11, 2009) (citing *Heck*, 512 U.S. at 487).  In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87.

"A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.*  A plaintiff "must allege that his arrest and detention has been reversed, expunged, or declared invalid, for a civil action before this Court is not the appropriate vehicle to challenge, in the first instance, the validity of that action." *Jefferson v. Chicara*, No. 13-CV-5649 (JS) (ARL), 2015 WL 1439932, at *5 (E.D.N.Y. Mar. 26, 2015).  This is known as the "favorable-termination rule."  *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 454 (E.D.N.Y. 2018).

Plaintiff alleges that Defendants, "as a corrupted team," fabricated and tampered with evidence so that he could be convicted and deprived due process of law.  (ECF No. 8 at 5.) Plaintiff alleges that employees of the SCPD and Suffolk County Officials created circumstances so it would appear as if Plaintiff committed the crimes he was convicted of, when he had not. (*Id.* at 6.)

Here, and as stated in the undersigned's prior R&R (ECF No. 102), Plaintiff has not received a favorable termination; his conviction or sentence was not reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See Smalls v. City of New York*, 181 F. Supp. 3d 178, 188 (E.D.N.Y. 2016) ("New York law broadly considers any termination of a criminal proceeding to have been terminated favorably when there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense.") (internal quotes omitted); *see also Molina v. New York,* No. 21-CV-3144 (RPK) (JMW), 2023 U.S. Dist. LEXIS 8961, at *14 (E.D.N.Y Jan. 17, 2023) (noting that plaintiff had not received a favorable termination nor a reversal of his conviction or sentence or expungement by executive order).  Rather, Plaintiff's conviction was *upheld* following Plaintiff's attempts at habeas corpus review and state-court appeals.  (ECF No. 73 at 1.)

Because Plaintiff's claims of malicious prosecution and due process violations necessarily rest on the validity of his underlying criminal convictions, they require dismissal under *Heck's* favorable termination rule.  *See Leach v. City of New York,* No. 20-CV-854 (LDH) (JRC), 2022 U.S. Dist. LEXIS 173580, at *7-8 (E.D.N.Y. Sept. 26, 2022) (finding no allegations that the conviction was overturned and dismissing plaintiff's § 1983 claims in accordance with

*Heck*); *Martinez v. DeMarco*, No. 13-CV-4209 (JFB) (AKT), 2018 WL 1115150, at *1 (E.D.N.Y. Feb. 26, 2018) (dismissing Plaintiff's § 1983 claims of, *inter alia*, malicious prosecution as barred by *Heck*); *Perez v. Cuomo*, No. 09-cv-1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotations omitted); *Duamutef v. Morris*, 956 F. Supp. 1112, 1115–16 (S.D.N.Y. 1997) ("The gravamen of plaintiff's complaint is that he was 'framed' for a murder he did not commit in retaliation for his political involvements. . .As required by *Heck,* these claims will be dismissed.").

However, Plaintiff's remaining claims for false arrest, false imprisonment, and negligence necessitates a different analysis.  While Plaintiff's claims for false arrest and false imprisonment fail for other reasons, "the Court cannot say with certainty, and it appears unlikely, that the *only* the evidence for conviction was obtained pursuant to Plaintiff's arrest such that exclusion of that evidence from Plaintiff's criminal proceedings would bear on the validity of his conviction." *Martinez,* 2018 WL 1115150, at *1 (E.D.N.Y. Feb. 26, 2018); *see also Fifield v. Barrancotta*, 353 F. App'x 479, 480–81 (2d Cir. 2009) ("Fourth Amendment claims for unlawful arrest . . . do not ordinarily fall within the *Heck* rule, since a finding for the plaintiff would not necessarily demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, at least unless the conviction was dependent on evidence obtained as a result of the arrest.") (internal quotes and cites omitted.)  Accordingly, dismissal of Plaintiff's false arrest and false imprisonment claims is not warranted on this ground.

Similarly, as it relates to Plaintiff's negligence claim, success on this claim does not demonstrate the invalidity of Plaintiff's underlying criminal conviction. *See Williams v. Hartford Police Dep't*, No. 15-CV-933 (AWT), 2016 WL 11659354, at *3 (D. Conn. June 17, 2016) ("Success on the remaining claims, i.e., a federal retaliation claim and various state law torts, also would not demonstrate the invalidity of the plaintiff's conviction or sentence."). Nonetheless, given the dismissal of Plaintiff's federal claims, it is respectfully recommended that the Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Dudley v. Singas*, No. 16-CV-1548 (JMA) (AYS), 2017 WL 5312131, at *3 (E.D.N.Y. Nov. 13, 2017) (dismissing plaintiff's federal claims under *Heck* and declining to exercise supplemental jurisdiction over plaintiff's state-law negligence claim); *Rosato v. New York Cnty. Dist. Attorney's Off.*, No. 09-CV-3742 (DLC), 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14, 2009) (dismissing plaintiff's malicious prosecution and due process claims under *Heck* and declining to exercise supplemental jurisdiction over plaintiff's state-law claims).[4]

Accordingly, it is respectfully recommended that Plaintiff's claims sounding in malicious prosecution and due process violations be dismissed as barred by *Heck*'s favorable termination rule.

**B. Plaintiff's False Arrest and False Imprisonment Claims are Barred by the Statute of Limitations**

Defendants argue that because this action was not commenced for more than three years following Gross's underlying arrest, his claims for false arrest and false imprisonment are barred by the statute of limitations. (ECF No. 110-1 at 3; ECF No. 111-1 at 14; ECF No. 126-1 at 12.)

---

[4] In any event, Plaintiff's negligence claim warrants dismissal because "New York does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution." *See Dollard v. City of New York*, 408 F. Supp. 3d 231, 238 (E.D.N.Y. 2019). "To the extent that a claim for negligence . . . is based upon injury incident to an arrest, a plaintiff must resort to the traditional tort remedies of false arrest, false imprisonment, and malicious prosecution." *Id.*

In response, Plaintiff argues that this action is timely insofar as it has been brought within one year from the conviction of Spota.  (ECF No. 118 at 10-11.)

"Under New York law, the statute of limitations for § 1983 claims premised on torts such as false arrest or false imprisonment is three years."  *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005).  For these claims, "the statute of limitations begins to run 'when the alleged false imprisonment ends.'"  *Jones v. City of New York*, 846 Fed Appx. 22, 24 (2d Cir. 2021) (citing *Wallace v. Kato,* 549 U.S. 384, 388–89 (2007)).  A false imprisonment ends when the victim "becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges."  *Id.*

The Court finds that the accrual of Plaintiff's claim began when Plaintiff was arrested and arraigned.  *See McDaniel v. City of New York*, 585 F. Supp. 3d 503, 514 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19-CV-11265 (AT) (RWL), 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022) (finding the statute of limitations for *pro se* plaintiff's claim for false arrest began to accrue upon the date of arraignment).

Plaintiff states that he was arraigned on November 1, 2007 (ECF No. 124 at 5) ("On November 1, 2007, Plaintiff was arraigned in First District Court, 400 Carleton Ave, Central Islip, New York.")  Thus, Plaintiff was not arraigned in his underlying criminal proceedings within three years of October 7, 2020.  The three-year statute of limitations had undoubtedly expired prior to Plaintiff's commencement of this action.  There also appears to be no available grounds to toll the accrual.  Accordingly, it is respectfully recommended that Plaintiff's claim for false arrest and false imprisonment be dismissed as untimely.

### C. Plaintiff Fails to State a Claim for False Arrest and False Imprisonment

Dismissal of these claims is also warranted because Plaintiff's Amended Complaint fails to state a claim for these alleged offenses. Defendants argue that Plaintiff's claims for false arrest and false imprisonment fail because Plaintiff's convictions conclusively establish the existence of probable cause which renders him unable to prove his § 1983 false arrest and false imprisonment claims. (ECF No. 110-1 at 4; ECF 111-1 at 14; ECF No. 126-1 at 11-12.)

Under New York law, claims for false arrest and false imprisonment are the same, and the elements for both are the same under § 1983. *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To establish a claim for false arrest, a plaintiff must allege that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Ames v. City of New York*, No. 20-cv-11081, 2023 U.S. Dist. LEXIS 52151, at *9 (S.D.N.Y. Mar. 27, 2023). The existence of probable cause is a complete defense to a claim for false arrest/false imprisonment. *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 377 (E.D.N.Y. 2013). "'[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause' sufficient to preclude a false arrest claim." *Poole v. Hawkins*, No. 18-CV-443 (MKB), 2021 WL 695119, at *6 (E.D.N.Y. Feb. 23, 2021) (quoting *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986)).

Here, it is undisputed that Plaintiff has been convicted. (*See* ECF No. 8); *see also Gross*, 2021 WL 2291839 at *1. Plaintiff's convictions necessarily establish a finding of probable cause. Accordingly, Plaintiff's claims for false arrest and false imprisonment fail. *See Herbert v. Sanfeliz*, No. 22-CV-4299 (KMK), 2024 U.S. Dist. LEXIS 4323, at *4 (S.D.N.Y. Jan. 9, 2024) ("It is well-established that a person who has been convicted of the crime for which he was

arrested cannot state a claim for false arrest because his conviction establishes that his confinement was grounded on probable cause [and] therefore[] was privileged."); *Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 249 (E.D.N.Y. 2017) ("A person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest.").

Accordingly, it is respectfully recommended that Plaintiff's claims for false arrest and false imprisonment be dismissed.

### D. Plaintiff Fails to State a Claim for Malicious Prosecution

If the Court finds that Plaintiff's malicious prosecution claim does not necessarily seek to invalidate his underlying criminal convictions and are not otherwise barred under *Heck*, Plaintiff's malicious prosecution claim should nevertheless be dismissed because Plaintiff fails to adequately state a claim.

Defendants argue that Plaintiff's malicious prosecution claim should be dismissed because the underlying criminal proceedings have *not* been terminated in his favor, thus precluding his malicious prosecution claim. (ECF No. 110-1 at 4; ECF No. 111-1 at 13; ECF No. 126-1 at 11.) And with respect to Judge Hinrichs specifically, there is no indication that he initiated the proceedings or maliciously prosecuted him throughout the case. (ECF No. 111-1 at 13.) Plaintiff does not proffer a response.

To establish a claim for malicious prosecution under § 1983 and New York law, a plaintiff must allege (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015). "A Section 1983 malicious prosecution claim also requires a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth

Amendment rights." *Buari v. City of New York*, 530 F. Supp. 3d 356, 383 (S.D.N.Y. 2021) (quotes omitted).

Prior to 2022, to meet the favorable termination element, a plaintiff in the Second Circuit needed to show some "affirmative indication of innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018), *abrogated by Thompson v. Clark*, 212 L. Ed. 2d 382, 142 S. Ct. 1332 (2022). However, the Supreme Court has recently rejected Second Circuit precedent on the "favorable termination" element and held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, ⎯ U.S. ⎯, 142 S. Ct. 1332, 1341, 212 L.Ed.2d 382, 393 (2022). Rather, "[a] plaintiff need only show that the criminal prosecution ended *without* a conviction." *Id.* (emphasis added).

Plaintiff cannot meet even the lowered *Thompson* bar here. Because the criminal proceedings against Plaintiff did end with convictions, it cannot be found that the proceedings were terminated in his favor. As a result, Plaintiff cannot maintain an action for malicious prosecution. *See Harry v. City of New York*, No. 23-cv-69, 2024 U.S. App. LEXIS 1618, at *4 (2d Cir. Jan. 24, 2024) ("[P]robable cause to prosecute both charges defeats Harry's claim.").

Accordingly, it is respectfully recommended that Plaintiff's claim for malicious prosecution be dismissed.

### E. Plaintiff's Claims Against Defendants Hinrichs and Spota are Barred By Immunity

Defendant Hinrichs asserts that any claims against him are barred by judicial immunity and sovereign immunity (ECF No. 111-1). Defendant Spota makes similar arguments, stating that he is immune from suit based on the doctrines of prosecutorial, sovereign, and qualified immunity. Plaintiff has not responded directly to any of these asserted affirmative defenses.

### a. Judicial Immunity as to Defendant Hinrichs Individually

Defendant Hinrichs alleges that Plaintiff's claims against him are subject to dismissal based on judicial immunity because (1) the conduct at issue concerns actions related to his role as a judge in Plaintiff's prior trials and (2) negligent or erroneous conduct does not amount to a challenge to Hinrichs's jurisdiction.  (ECF No. 126-1 at 12.)

"Judges generally receive absolute immunity from suits for money damages for their judicial actions, and from suits for injunctive relief under § 1983 with certain exceptions not relevant here." *Salu v. Miranda,* 830 Fed. Appx. 341, 347 (2d Cir. 2020).  Judicial immunity applies if (1) "the relevant action is judicial in nature" and (2) the defendant "had jurisdiction over the subject matter before him."  *Id.* (citing *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005)).  "[J]udicial immunity is *not* defeated by allegations of bad faith, malice or mistake." *L. Offs. of Geoffrey T. Mott v. Hayden*, No. 22-cv-07398 (JS) (SIL), 2023 U.S. Dist. LEXIS 217629, at *15 (E.D.N.Y. Dec. 6, 2023) (emphasis added).

As to the first prong, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature."  *McCluskey v. Roberts,* No. 20-4018, 2022 U.S. App. LEXIS 15621, at *13 (2d Cir. June 7, 2022) (citing *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)).  But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and not other court personnel.  *Brown v. Ukeiley*, No. 22-CV-7214 (JMA) (AYS), 2023 U.S. Dist. LEXIS 183792, at *9-10 (E.D.N.Y. Oct. 12, 2023).

Per the Complaint, Plaintiff alleges that the trial court violated his rights by

- negligently assigning or refusing to provide him with adequate assigned counsel;

- excluding as irrelevant evidence a log of calls placed between Defendants Lopez and Sanchez and Plaintiff;

- not conducting an adequate investigation which would have revealed that Plaintiff was forced to deliver cars for Madonna containing drugs in exchange for money; and

- denying witnesses at trial.[5]

(ECF No. 8 at 6, 9-10, 12, 16; ECF No. 118 at 8.)

The acts alleged by Plaintiff fall squarely within Defendant Hinrichs's role and duties as a judicial officer while he presided over Plaintiff's prior two criminal trials. Judge Hinrichs made decisions regarding his assigned counsel and whether or not to exclude evidence, including witness testimony—these are standard duties typically completed by a judge and did not run beyond the scope of his duties. Further, though immunity is not defeated by malice, there is not even a scintilla of evidence that could be gleaned indicating that Defendant Hinrichs undertook any of these acts in bad faith. Notably, Plaintiff does not allege any acts performed by Defendant Hinrichs that fall outside the scope of absolute judicial immunity. *See Thomas v. Martin-Gibbons*, 857 Fed. Appx. 36, 38 (2d Cir. 2021) (finding that the family court judge had jurisdiction to decide the issues plaintiff complained of and acted in his judicial capacity when presiding over the case); *McCluskey*, 2022 U.S. App. LEXIS 15621 at *13 (finding hearing officer entitled to judicial immunity despite allegations of conspiracy and corruption).

For these reasons, the Court finds that Defendant Hinrichs is protected by judicial immunity.

---

[5] Further, in his opposition, Plaintiff alleges that (1) Defendant Hinrichs never gave the jury instructions about duress, which would have demonstrated that he was threatened and forced to participate in these acts and that (2) Hinrichs violated Plaintiff's due process rights when he allowed prosecution's witness to take the stand knowing they would lie under oath and when he denied his pre-trial motion to explore Defendant Lopez's disciplinary records. (ECF No. 118 at 8-9.)

### b.  Sovereign Immunity as to Defendants Hinrichs and Spota Officially

Both Hinrichs and Spota allege that the claims against them are protected by sovereign immunity under the Eleventh Amendment.  Defendant Hinrichs avers that any claims against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction based on the doctrine of sovereign immunity.  (ECF No. 111-1 at 8.)

"The Eleventh Amendment provides immunity from suits for money damages in federal court to states, state entities, and state officials acting in their official capacities." *Irazu v. Aja,* No. 23-cv-702, 2023 U.S. App. LEXIS 32180, at *2 (2d Cir. Dec. 6, 2023) (citing U.S. Const. Amend. XI).  Put simply, if a defendant is deemed immune from suit, then the court is stripped of jurisdiction. *See L. Offs. Of Geoffrey T. Mott,* 2023 U.S. Dist. LEXIS 217629 at *13 (granting defendant's motion to dismiss where defendant, an official of the Nassau County Court, was entitled to Eleventh Amendment sovereign immunity protections).

"[P]rivate citizens may not maintain an action in federal court against a State itself, or against a state agency, unless the State has waived its sovereign immunity." *LoSardo v. Ribaudo*, No. 14-CV-6710 (JS) (GRB), 2015 U.S. Dist. LEXIS 13999, at *2 (E.D.N.Y. Feb. 5, 2015) (internal quotes omitted.)  State sovereign immunity can also be abrogated by Congress by "(1) unequivocally expressing its intent to do so, and (2) acting pursuant to a valid exercise of power." *Townsend v. New York*, No. 14-CV-6079 (CBA) (LB), 2015 WL 4692604, at *2 (E.D.N.Y. Aug. 6, 2015) (quoting *Kozaczek v. N.Y. Higher Educ. Servs. Corp.*, 503 F. App'x 60, 61 (2d Cir. 2012)).  "This jurisdictional bar applies regardless of the nature of the relief sought." *Murawski v. N.Y. State Bd. of Elections*, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  It is well settled that

New York has not consented to § 1983 suits in federal court and Congress did not abrogate state sovereign immunity by enacting 42 U.S.C. §1983. *Townsend*, 2015 WL 4692604 at *2.

Beyond voluntary waiver and congressional abrogation, there is one other exception to sovereign immunity: the *Ex Parte Young* exception. The *Ex Parte Young* exception permits a suit for injunctive relief where the constitutionality of a state official's actions enforcing state law are challenged. *Ex Parte Young*, 209 U.S. 123 (1908); *Bythewood v. New York*, No. 21-CV-04628 (LDH), 2022 WL 4661568, at *3 (E.D.N.Y. Sept. 30, 2022). "The exception applies when the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Bythewood*, 2022 WL 4661568 at *3.

There is no indication that any exception applies. Here, Plaintiff does not seek injunctive relief nor does he allege "an ongoing violation of federal law." *See Bythewood*, 2022 WL 4661568 at *3. Instead, Plaintiff seeks purely monetary damages of $7 million stemming from his state conviction. *See Molina v. New York*, No. 21-CV-3144 (RPK) (JMW), 2023 U.S. Dist. LEXIS 8961, at *18 (E.D.N.Y. Jan. 17, 2023) (finding that no exception to the sovereign immunity doctrine applied). Thus, on its face, immunity applies here.

Moreover, these allegations brought against Defendant Hinrichs and Defendant Spota in their official capacities are barred under sovereign immunity. *See Klein v. Zugabie*, No. 20-cv-1975, 2021 U.S. App. LEXIS 33912, at *2 (2d Cir. Nov. 16, 2021) (summary order amended Dec. 13, 2021) (affirming dismissal of § 1983 claims against District Attorney on Eleventh Amendment sovereign immunity grounds because DA was sued in his official capacity, and "in New York, district attorneys prosecuting a criminal matter act in a quasi-judicial capacity and represent the State, not the county.") (citing *Ying Jing Gan*, 996 F.2d at 536)). Thus, the proper entity would be the D.A.'s Office or other relevant governmental entity, not the officials here.

24

Accordingly, the undersigned respectfully recommends that claims brought against Defendants Hinrichs and Spota in their official capacity be dismissed.

### c. Prosecutorial Immunity as to Defendant Spota

In addition to sovereign immunity, Defendant Spota also argues that he is immune as a prosecutor from Plaintiff's claims.  (ECF No. 126-1 at 13-15.)

"It is well established that prosecutors are entitled to prosecutorial immunity for performing prosecutorial activities that are intimately associated with the judicial phase of the criminal process, including the decision whether to commence a prosecution." *Bussey v. Devane*, No. 13-CV-3660 (JS) (WDW), 2013 WL 4459059, at *3 (E.D.N.Y. Aug. 16, 2013) (internal quotation marks omitted) (citing *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Prosecutorial immunity from § 1983 claims is broad and covers essentially all acts "regardless of motivation, associated with [the prosecutor's] function as an advocate." *Id*. (citing *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995).  Indeed, "absolute prosecutorial immunity creates a formidable obstacle for a plaintiff." *Quartararo v. Catterson*, 917 F. Supp. 919, 951 (E.D.N.Y. 1996).  However, not all claims brought against individual prosecutors as defendants are unsustainable and the Court must look at the nature of the prosecutor's function rather than the identity or status of who performed the function. *Id*. at 952 (citing *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995)). Administrative or investigative activities initiating and pursuing a criminal prosecution entitle a prosecutor to absolute immunity under the doctrine, while administrative duties and investigatory functions that do not relate to preparation for the initiation of a prosecution or judicial proceedings are not so protected. *See id*. at 952 (citations omitted).  "A government official does not have absolute immunity for acts that are manifestly or palpably beyond his authority or

performed in the clear absence of all jurisdiction." *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (internal quotation marks and citations omitted). The party claiming absolute immunity has the burden of establishing its applicability and "once a court determines that absolute immunity applies, 'the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.'" *Kroemer v. Tantillo*, 758 F. App'x 84, 87 (2d Cir. 2018) (quoting *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004).

Per the Complaint, Plaintiff alleges that Spota specifically "refused to conduct an investigation into these matters because he did not want to expose the conncetion [sic] between Matthew Madonna and the Suffolk County Officials…that took part in high steak [sic] poker games that Mr. Madonna held." (ECF No. 8 at 10.) Specifically, Spota shut down an investigation Plaintiff had with the Suffolk County Internal Affairs. (*Id.* at 12.) Plaintiff states that Spota was later convicted of obstructing a civil rights investigation. (*Id.*) Relatedly, he states that he did not want to expose (1) Sanchez, who was the lookout for Malezhik's murder; (2) Burke's involvement with the Gilgo Beach prostitutes; and (3) that his office withheld surveillance from Plaintiff since it would show that he did not participate in the crimes. (*Id.* at 14, 16.)

The allegations against Spota fit squarely within the duties of a prosecutor. He was acting within the scope of his duties by "pursuing a criminal prosecution [and is there] immune from a civil suit for damages under § 1983." *Anilao v. Spota*, 774 F. Supp. 2d 457, 476, 478 (E.D.N.Y. 2011) (noting that "a prosecutor will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.") (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)); *Shmueli v. City of N.Y.*, 424 F.3d 231, 237-38 (2d

Cir. 2005) (dismissing claims against prosecutor because "[a] prosecutor is also entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information."); *Kroemer*, 758 F. App'x. at 87 (finding that allegations that ADA "fraudulently amended [the] indictment" and "then fabricated evidence to support that amendment by coaching a witness" "f[ell] squarely within the prosecutor's role as advocate and therefore remain[ed] protected by absolute immunity."); *Hill*, 45 F.3d at 661 (finding that a prosecutor's conduct including "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate").  Thus, as harsh as these allegations against Spota are, he is still entitled to prosecutorial immunity because he acted within the scope of his duties as an advocate for the People.

### d.  Qualified Immunity as to Defendant Spota

Defendant argues that he is entitled to at least qualified immunity since Plaintiff has not, and cannot, demonstrate that the indictment and conviction were procured by fraud, perjury, or otherwise conducted in bad faith.  (ECF No. 126-1 at 17.)

Although prosecutors receive absolute immunity for acts performed in connection with the judicial phase of the criminal process, they "receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not create to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'"  *Soto v. City of New York*, 132 F. Supp. 3d 424, 440 (E.D.N.Y. 2015) (citing Simon 727 F.3d at 171); *see also Rich v. New York*, No. 21-cv-3835 (AT), 2022 U.S. Dist. LEXIS 60779, at *17 (stating that prosecutors have qualified immunity for investigative functions such as those taken before probable cause exists to arrest a perpetrator).  "Evaluating evidence and interviewing witnesses"

are examples in which absolute immunity would apply, while "putting searches 'for the clues and corroboration' leading to an arrest" would fall under qualified immunity. *Soto*, 132 F. Supp. 3d at 440 (citing *Giraldo v. Kessler*, 694 F.3d161, 166 (2d Cir. 2012)).

Government officials are protected from civil damages liability under qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kellner v. City of New York*, No. 17-CV-1268 (MKB), 2021 WL 4251343, at *15 (E.D.N.Y. Sept. 16, 2021) (internal quotation marks and citations omitted). Specifically, when considering a qualified immunity defense, the court considers (1) whether the official violated a statutory or constitutional right, and (2) whether the right was clearly established at the time of the challenged conduct.[6] *Cerisier v. City of New York*, No. 22-1756, 2023 U.S. App. LEXIS 18298, at *4 (2d Cir. July 19, 2023). Other cases have also considered whether the defendant's action was objectively legally reasonable in light of the clearly established legal rules. *Maganiello v. City of N.Y.*, 612 F.3d 149, 164 (2d Cir. 2010). "The Second Circuit has held, however, that whether a government official's actions were objectively reasonable turns on factual questions that cannot be resolved at this [motion to dismiss] stage of the proceedings." *Taylor v. Wilde*, No. 11-CV-3608 (JS) (ETB), 2012 U.S. Dist. LEXIS 96147, at *4 (E.D.N.Y. July 10, 2012) (internal quotation marks omitted) (collecting cases). However, qualified immunity may be found on a Rule 12(b)(6) motion if the complaint establishes the circumstances that are required for a qualified immunity defense. *Hirsch v. Desmond*, No. 08-CV-2660 (JS) (AKT), 2010 U.S. Dist. LEXIS 105736, at *5

---

[6] "A right is clearly established if 'at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Barret v. Livingston Cty.*, No. 14-CV-6593 (FPG), 2019 U.S. Dist. LEXIS 36914, at *49 (W.D.N.Y. Mar. 7, 2019) (citing *Thon v. Grimshaw*, No. 13-cv-898, 2016 U.S. Dist. LEXIS 115764, at *10 (N.D.N.Y. Aug. 26, 2016)).

(E.D.N.Y. Sep. 30, 2010). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation[,]" because the defense is lost if a case erroneously proceeds to trial. *Pearson v. Callahan*, 555 U.S. 223, 231-32, (2009) (citations omitted); *see also Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022) ("Although it is possible for a qualified immunity defense to succeed on a motion to dismiss, such a defense 'faces a formidable hurdle . . . and is usually not successful.'").

As is relevant here, "[a] presumption of probable cause is created by a grand jury indictment." *See McLennon v. Vorrao*, No. 13-CV-128 (KAM) (SMG), 2015 U.S. Dist. LEXIS 42920, at *26 (E.D.N.Y. Mar. 31, 2015). The presumption may be "rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)) (internal cited omitted). Plaintiff has the burden to rebut "the presumption of probable cause that arises from the indictment." *Id.* Plaintiff may not plead allegations "with mere 'conjecture' and 'surmise' that [the] indictment was procured as a result of conduct undertaken by the defendants in bad faith." *See Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 450 (E.D.N.Y. 2015) (citing *Savino*, 331 F.3d at 73).

Here, the qualified immunity defense can be established based on the face of the complaint itself. Plaintiff cannot overcome the first prong of the qualified immunity defense, because he cannot demonstrate that Spota violated a statutory or constitutional right. *See also Kee v. City of New York*, 12 F.4th 150, 161 n.12 (2d Cir. 2021) (declining to consider qualified immunity because there was no constitutional violation). Probable cause existed for Plaintiff's arrest and subsequent conviction and sentencing. Indeed, this quantum of suspicion was reinforced when Plaintiff failed to overturn his conviction.

29

Further, Plaintiff has not produced any evidence beyond mere speculation demonstrating that Defendant Spota "refused to conduct an investigation into these matters because he didn't want to expose the conncetion [sic] between Matthew Madonna and the Suffolk County Officials…." (ECF No. 8 at 10); (*see also id.* at 14, 16.) That is, there could have been other reasons for Spota's refusal to conduct an investigation.

"Qualified immunity does not apply when alleged fabrication of evidence is key to the case." *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 372 (E.D.N.Y. 2021). But even if the fabrication of evidence allegation were true, Plaintiff's claims are wholly defeated by the statute of limitations and findings of probable cause from his prior cases.

Cases in this Circuit have denied applications of qualified immunity where the malicious prosecution claims and/or false arrest or imprisonment claims were still viable and not dismissed because of want of timeliness or insufficient detail. *See McLennon v. Vorrao,* No. 13-CV-128 (KAM) (SMG), 2015 U.S. Dist. LEXIS 42920, at *27, 32-33 (E.D.N.Y. Mar. 31, 2015) (finding some of plaintiff's claims to result in favorable termination and denying defendant's motion to dismiss for malicious prosecution and noting that "plaintiffs have sufficiently alleged that their prosecution was not based on probable cause and that the officer defendants acted in bad faith by fabricating, misrepresenting, and withholding evidence, a reasonable officer would not have considered the defendants' alleged conduct to be lawful"); *Rogers v. Bisono*, No. 15-CV-6670, 2016 U.S. Dist. LEXIS 105096, at *13 (S.D.N.Y. Aug. 9, 2016) (finding plaintiff stated a legally sufficient claim for false arrest and that "[d]efendants [could not] be protected by qualified immunity since they allegedly fabricated evidence" surrounding his arrest); *Rich*, 2022 U.S. Dist. LEXIS 60779 at *18 (finding plaintiff's malicious prosecution claim to be timely and providing him an opportunity to replead and that defendants were not entitled to qualified immunity where

they "knowingly coached a witness to give false testimony before a grand jury"); *Kanciper v. Lato*, 989 F. Supp. 2d 216, 232-33 (E.D.N.Y. 2013) (finding that plaintiff's malicious prosecution claims survived the statute of limitations and allowing plaintiff to replead and noting insufficient information at the pleadings stage to determine whether the defendant was entitled to qualified immunity because there had been no exchange of policies indicating violations of any policies and could have demonstrated whether Spota "looked the other way").  This case is distinguishable.  Because the Court has already found that Plaintiff's claims were either time barred or factually insufficient (ECF No. 102), the Court should accordingly find that Defendant Spota is entitled to qualified immunity.

### F.  Plaintiff's Ability to Further Amend his Claims

"A *pro se* complaint is to be read liberally. Certainly, the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999)).  However, even *pro se* plaintiffs should be denied leave to replead where it is clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile.  *Taylor v. Keen*, No. 11-CV-5221 (JFB) (ARL), 2012 WL 3835383, at *5 (E.D.N.Y. Sept. 5, 2012).

Here, despite the harsh allegations asserted in Plaintiff's Amended Complaint, there does not seem to be any further facts or legal theories Plaintiff could assert if given leave to amend, which could cure the deficiencies of his current claims.  Plaintiff's malicious prosecution and due process claims will continue to be barred under *Heck*'s favorable termination rule, his false arrest and false imprisonment claims will continue to be barred by the statute of limitations, and in any event, Plaintiff's conviction will prevent him from stating a claim for false arrest, false

imprisonment, and malicious prosecution.  For these reasons, it is respectfully recommended that the Court refrain from granting any further leave to replead beyond the two pleadings to date. *See Cuoco*, 222 F.3d at 112 ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied"); *Chudnovsky v. Leviton Mfg. Co.*, 158 F. App'x 312, 314 (2d Cir. 2005) (denying leave to amend where plaintiff already had one opportunity to amend his complaint and "granting leave to amend would be unproductive or futile . . . [because plaintiff] did not indicate that he could allege additional facts that would cure the deficiencies in his already-amended complaint); *see also Murdock v. Legal Aid Soc'y*, No. 14-CV-0508 (JS) (SIL), 2015 U.S. Dist. LEXIS 1487, at *4 (E.D.N.Y. Jan. 6, 2015) (holding that leave to amend would be futile because plaintiff's claims failed as a matter of law, and there was no possibility he could state a plausible § 1983 claim against defendants).

## IV.   CONCLUSION

Based on the foregoing, the undersigned respectfully recommends Defendants Alex Sanchez, Hinrichs, and Spota's motion for an order dismissing Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) be granted, without leave to replead.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Defendants Alex Sanchez, Hinrichs, and Spota.  Those Defendants are directed to serve one copy of this Report and Recommendation on Plaintiff and file proof of service on ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections

must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision") (citation omitted); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
         February 5, 2024

                                    RESPECTFULLY RECOMMENDED,

                                    /s/ *James M. Wicks*

                                        JAMES M. WICKS
                                    United States Magistrate Judge