UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JAMES GROSS,

                 Plaintiff,

                        **REPORT AND**
                        <u>**RECOMMENDATION**</u>
        -against-                 20-CV-4873 (DG) (JMW)

MICHAEL SANCHEZ *et al*,

                 Defendants.
-------------------------------------------------------------------X

**A P P E A R A N C E S :**

    James Gross
    09-A-1719
    **Green Haven Correctional Facility**
    P.O Box 4000
    Stormville, NY 12582
    *Plaintiff Pro Se*

    **Christopher McPartland**
    26 Dune Court
    Northport, NY 11768
    *Defendant Pro Se*

**WICKS,** Magistrate Judge:

    Plaintiff commenced this civil action shortly after his habeas corpus proceeding[1] in

October 2020, seeking damages under 42 U.S.C. § 1983 against Defendants Michael Sanchez

("Sanchez"), Eugene Lopez ("Lopez"), Officer Sanchez ("Alex Sanchez"), Deidre Horney

("Horney"), former judge of the Suffolk County Court C. Randall Hinrichs ("Hinrichs"), John

---

[1] Plaintiff originally sought relief in June 2020 by Writ of Habeas Corpus petition challenging his March and July 2009 state convictions for several counts of robbery. *Gross v. Royce*, No. 20-CV-03037 (DG), 2021 WL 2291839, at *1 (E.D.N.Y. June 4, 2021). In that case, Plaintiff asserted claims of ineffective assistance of counsel, due process, and actual innocence. *Id.* These claims were ultimately dismissed. *Id.*

White ("White"), Robert Dito ("Dito"), Thomas Spota, James Burke ("Burke"), Christopher McPartland ("McPartland"), and Thomas Spota III (together with Thomas Spota as "Spota") violated his constitutional rights during Plaintiff's state criminal prosecutions. (ECF No. 8.) Specifically, he asserts claims of false arrest, false imprisonment, negligence, malicious prosecution, and due process violations, all in violation of his Fourth and Fourteenth Amendment constitutional rights. (*Id*.) The Court has previously adopted the undersigned's Reports and Recommendations ("R&Rs") granting several of the Defendants' motions to dismiss. (ECF Nos. 102 and 128.) Therefore, the only remaining appearing Defendant is Christopher McPartland.[2]

Now before the Court on referral from Honorable Diane Gujarati is Defendant Christopher McPartland's, a former Assistant District Attorney from the Suffolk County District Attorney's Office's Corruption Bureau, motion to dismiss Plaintiff's Amended Complaint. (Electronic Order dated June 20, 2024; ECF No. 138.) This motion seeks essentially the same relief sought in the terminated Defendants' motions to dismiss and asserts that the Amended Complaint should be dismissed for the same reasons outlined in the undersigned's prior R&Rs. (*See* ECF Nos. 53, 57, 110-111, and 126.) For the reasons set forth below, the undersigned respectfully recommends that Defendant McPartland's motion to dismiss be granted.

---

[2] Defendant Dito was terminated from the case as a suggestion of death had been filed (ECF No. 74) and there was no motion to substitute filed on his behalf. (Electronic Order dated Apr. 25, 2024.) Dito was subsequently dismissed as a party in this action. (Electronic Order dated May 3, 2024.)

As to Defendant White, the Court found that Defendant White does not appear to have been served properly and ordered that he be re-served and he was. (Electronic Order dated Apr. 27, 2024; ECF No. 137.) The Court then directed Plaintiff to move for default judgment against White. (Electronic Order dated May 31, 2024.) Plaintiff filed a request for a certificate of default against White, but the request was denied given that White was not served with the Summons and Complaint. (ECF Nos. 140-141); (Electronic Order dated July 18, 2024.) The undersigned directed that the parties provide all known addresses belonging to White by September 13, 2024, so that Defendant White can be properly served. (Electronic Order dated Aug. 29, 2024.)

## I.   FACTUAL AND RELEVANT PROCEDURAL BACKGROUND
### A.  Factual Background

Given Plaintiff's *pro se* status, the facts are drawn from Plaintiff's various filings including the Amended Complaint, Plaintiff's supplemental brief, Plaintiff's oppositions to Defendants' briefs, and Plaintiff's letter submission of "credible and compelling evidence." (ECF Nos. 8, 51, 118, 124, and 127.)  These facts are assumed true for the purposes of the motion to dismiss.

In or around 2009, Plaintiff was convicted on several counts of robbery, resulting from two separate trials.  (*See* ECF No. 8.)  He is currently incarcerated at the Green Haven Correctional Facility.  (*Id.*)

***Plaintiff's Connection with the Suffolk County Officials***

Plaintiff was involved in a past relationship with Matthew Madonna's daughter.  (ECF No. 118 at 3.)  According to Plaintiff, Matthew Madonna was "the highest ranking member of the Lucchese family."  (ECF No. 8 at 7.)  Plaintiff alleges there was a connection between Detective Lopez, the lead detective on his case, other Suffolk County Police Department ("SCPD") officials, and Madonna.  (*Id.*)  He claims he was introduced to many individuals that worked for SCPD.  (*Id.*)  In 2006, Plaintiff was responsible for bringing SCPD and Suffolk County District Attorney's Office ("D.A.'s Office") officials "things that came through Mr. Madonna in return for favors."  (*Id.* at 8.)  Madonna and Plaintiff even paid Detective Lopez $5,000 a month to have vehicles diverted when Plaintiff would complete assignments for Madonna.  (*Id.*)  In other words, because Lopez was receiving these monies, he would overlook Madonna's wrongdoings.

In addition, Plaintiff would also deliver cash "and other things" to SCPD officials' houses and at car washes.  (*Id.* at 8-9.)  Plaintiff has also demonstrated his purported knowledge of these

officials' houses by providing the court with maps and blueprints. (*Id*. at 8.) With respect to Officer Sanchez, Plaintiff avers that on "numerous" occasions, he would "deliver money and guns" "on [] numerous [occasions]." (*Id*.) To support his allegation about Sanchez, Plaintiff states that Sanchez lived in Eagle Estates and drove a yellow sports car. (*Id*.) Sanchez, Plaintiff says, was the lookout for Irina Malezhik's (a Russian translator) murder that occurred on October 19, 2007. (*Id*. at 8-9.)

With Lopez's help, Madonna "created circumstances" that appear as though Plaintiff had the alleged committed crimes. (*Id*. at 7-8.) Specifically, he states that Defendants plotted against him by fabricating stories and tampering with evidence, which ultimately led to his incarceration. (*Id*. at 5.)

### Former Defendants' Involvement in the Gilgo Beach Crimes

Plaintiff states that the victims of the Gilgo Beach crimes were paid to transport illegal cars and SCPD officials oversaw these transactions and received kickbacks in exchange and they participated in "sex parties." (ECF No. 8 at 13-14.) This is evident from former Defendant Burke's pleading guilty to a civil rights violation for assaulting a suspect after the suspect "st[ole] a stash of porn and sex toys" from Burke's vehicle. (*Id*. at 14.) Plaintiff also says there is plenty of evidence that Burke joined in on these sexual activities with prostitutes. (ECF No. 127 at 5.)

### Threats to Plaintiff

In 2008 to 2009, Plaintiff told the court that from 2006 to 2007, he was forced to participate in illegal acts by Madonna and Suffolk County officials. (ECF No. 8 at 12.) When Plaintiff refused to partake in killing Richie Taylor, a family member of a victim in a series of murders at Gilgo Beach, Madonna threatened to kill Plaintiff's girlfriend and his family. (*Id*. at

4

13.)  To further intimidate Plaintiff, on October 19, 2007, "Plaintiff was forced to witness the shooting and dismemberment of Ms. Irina Malezhik in a pet cemetery." (*Id*.)

Relatedly, Plaintiff's alleges that officers testified in a related case, *United States v. McPartland*, 81 F.4th 101 (2d Cir. 2023), that they only participated in the crimes to conceal Burke's prior misconduct "out of fear of retaliation against their [families]." (ECF No. 127 at 1-2, 4.)

### Case Sensitive Information Leaked to Defendants

From 2008 to 2009, Plaintiff told counsel and the court that he had to contact the D.A.'s Office because Madonna threatened his girlfriend. (ECF No. 8 at 10-11.)  Subsequently, the D.A.'s Office investigators recorded a conversation between Plaintiff and Madonna's daughter. (*Id*. at 11.)  In that conversation, Madonna's daughter told Plaintiff that Lopez told Madonna that Plaintiff had spoken with the D.A.'s Office. (*Id*.)

Plaintiff tried to bring to the Court's attention that the D.A.'s Office was giving information about the Plaintiff's case to Madonna, but Plaintiff alleges nothing was done. (*Id.*) Plaintiff claims his suspicions that information was being leaked were later confirmed when on October 11, 2010, Dito and White, two D.A.'s Office investigators, were arrested for giving out sensitive information to organized crime gang members around the time that Plaintiff brought this information to the court's attention. (*Id*.)  And on this same date, Spota admitted that he did not know how organized crime members were getting confidential office information. (*Id*. at 12.)

***Bringing Other Pieces of Evidence to the Court's Attention to No Avail***

Plaintiff attempted to show a call log demonstrating the history of communications between Lopez, Sanchez and Plaintiff before and after Plaintiff was arrested. (ECF No. 8 at 9.) However, the state court judge said this was "irrelevant" and it was excluded from evidence.

Plaintiff states that had the court conducted an adequate investigation, it would have recognized that Madonna delivered drugs in car trunks in return for money. (*Id*. at 9-10.) He implies that this is evinced by the fact that on October 2, 2009, Madonna and 49 other Lucchese crime family members were arrested for trafficking guns and paying thousands in bribes to police officials. (*Id*. at 10.) Further, that on November 15, 2019, Madonna and other mafia members were convicted of, *inter alia*, murder and racketeering in federal court. (*Id*. at 10.)

***Defendants Withheld and/or Tampered with Evidence During Plaintiff's Criminal Trials***

In 2008 and 2009, Plaintiff informed his trial counsel that he could not have committed the robberies he was accused of because he was under surveillance by the SCPD at the time of the robberies. (ECF No. 8 at 15.) On March 1, 2016, Plaintiff discovered that although evidence of this surveillance exists, it was unavailable because the records were turned over to the FBI by SCPD and specifically by Sanchez and the D.A's Office. (*Id.*)

In January and February of 2017, Plaintiff filed Freedom of Information Law requests to obtain the surveillance tapes. (*Id*.) Plaintiff's request was eventually granted to allow him access to surveillance records (not the tapes), although Plaintiff never received those documents. (*Id.*)

Plaintiff alleges that the trial court and Horney denied Plaintiff from having Sanchez (the officer doing the surveillance) as a witness because Horney authorized Sanchez to place Plaintiff under surveillance and withheld this evidence from the defense. (*Id.* at 16.)

Plaintiff further alleges that during his first criminal trial, Plaintiff informed the court of the recorded conversation between himself and Rosina, which evidenced that the D.A's Office was giving out sensitive information to Madonna.  (ECF No. 51 at 1-2.)  The prosecutor stated she was unaware of any tape recordings.  (*Id.* at 2.)  Plaintiff alleges the prosecutor, however, later produced the recorded conversation in his second trial.  (*Id.*)  This tape supported Plaintiff's innocence, but was wrongfully withheld.  (*Id.*)

Plaintiff alleges he was denied a fair trial because former Defendant Horney presented witnesses that testified that Plaintiff committed the robberies, but those witnesses were told that Plaintiff was responsible for the robberies prior to trial.  (*Id.* at 4-5.)  In other words, any in-court identification was the product of suggestion.  (*Id.*)  Plaintiff further alleges that he was improperly questioned about previous convictions and that Lopez gave inconsistent and false testimony.  (*Id.* at 5.)

### *Defendant McPartland's Involvement*

As to McPartland's participation in the crimes, Plaintiff asserts that in 2008 to 2009, Plaintiff contacted Suffolk County's internal affairs unit, but both Spota and McPartland allegedly ordered that the investigation into the officers be closed.  (ECF No. 8 at 12.)  He also states that Defendant McPartland was convicted of obstruction of justice on December 17, 2019.  (*Id.*)

### B.  Procedural Background

Plaintiff commenced this action on October 7, 2020.  (ECF No. 1.)  On October 29, 2020, Plaintiff amended his complaint as of right ("Amended Complaint").  (ECF No. 8.)

On February 1, 2023, the undersigned recommended granting Defendants Sanchez, Lopez, Horney, and Burke's motion to dismiss, without leave to replead.  (ECF No. 102.)  The

undersigned found that the Plaintiffs' claims were: (1) barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) his false arrest and false imprisonment claims were barred by the statute of limitations; (3) he relatedly failed to state a claim for false arrest and false imprisonment; and (4) he failed to state a claim for malicious prosecution. (*Id.*) The undersigned also recommended to the Court that it "refrain from granting any further leave to replead." (*Id.* at 20.) This R&R was adopted by Judge Gujarati in its entirety. (Electronic Order dated Mar. 20, 2023.)

The Court then directed Plaintiff to serve all remaining defendants in the case. (Electronic Order dated Apr. 4, 2023.) Following the adoption of the R&R, Alex Sanchez appeared in the case. On June 27, 2023, Defendant Alex Sanchez filed his motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 110.) With the Court's approval, Defendant Hinrichs also promptly filed his motion to dismiss based on Plaintiff's failure to state a claim and for lack of jurisdiction. (ECF No. 111.) Finally, Defendant Spota also filed a motion for leave to file his anticipated motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 117), which the undersigned granted. (Electronic Order dated Aug. 16, 2023.) The motion was fully briefed on October 4, 2023. (ECF No. 126.) Judge Gujarati referred all three of Defendants' motions to the undersigned on July 27, 2023. (Electronic Order dated July 27, 2023.)

Defendants presented the same arguments as those made by the prior Defendants (ECF Nos. 110, 111, and 126-1) and Defendants Hinrichs and Spota additionally argued that the claims against them were barred pursuant to various immunity doctrines. (ECF Nos. 111-1 and 126-1.) Plaintiff opposed, and filed largely the same opposition for all three motions to dismiss. (ECF Nos. 118, 124, and 126-3.) He claimed that he was unable to consent to Defendants Sanchez's and Hinrichs's briefing schedules and that neither Defendant answered the summons and should

not be allowed to file their motions.  (*Id*.)  As to Defendant Hinrichs specifically, Plaintiff claimed that he "concealed evidence from the defense and the jury, [and] failed to give the jury an instruction on the affirmative defense of Duress and committed unlawful Acts."  (ECF No. 118 at 3.)

The Court recommended that all three Defendants' (Sanchez, Hinrichs and Spota) motions to dismiss in their entirety for the same reasons founds in the prior adopted R&R (*see* ECF No. 102) and that, Defendants Hinrichs and Spota are barred by judicial, sovereign, prosecutorial, and qualified immunity.  (ECF No. 128.)  The Court additionally stated that Plaintiff should not be given leave to amend the complaint given the futility of the already-pled claims.  (*Id.* at 31-32.)  Judge Gujarati adopted the undersigned's R&R in full.  (Electronic Order dated Apr. 16, 2024.)

Now, before the Court is the third iteration of this motion to dismiss, this time from the remaining appearing Defendant, who was only served with the Complaint on May 16, 2024. (ECF No. 138.)  Defendant McPartland asserts the *exact same* arguments in the instant motion, as set forth in the undersigned's R&R, namely that (1) the claim is barred by *Heck v. Humphrey*; (2) the false arrest and imprisonment claims are barred by the statute of limitations; (3) failure to state a claim for false arrest, imprisonment, and malicious prosecution; and (4) the claims are barred by sovereign, prosecutorial, and qualified immunity.  (*Id*.)  Notably, Defendant served a copy of his motion on *pro se* Plaintiff (*id*. at 10), and Plaintiff was given two opportunities to file an opposition to Defendant McPartland's motion but has not done so.  (Electronic Order dated May 3, 2024 and June 21, 2024.)[3]

---

[3] Defendant additionally requests that he be permitted to oppose Plaintiff's request for certification and motion for default.  (ECF No. 138 at 1.)  However, given that he was only formally served with the Complaint on May 16, 2024, the Court finds his response—that is, the instant motion to dismiss filed on May 22, 2024—to be timely.  *See* Fed. R. Civ. P. 12 (stating that answers are due within 21 days after

## II.    <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  More is required.

The above standards apply to *pro se* complaints as well, but in a less rigid manner.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes and citations omitted).  When considering a *pro se* complaint, the Court must interpret the pleading to raise the strongest claim plausibly suggested by the allegations.  *Rosen v. N. Shore Towers Apartments, Inc.*, No.

---

service of the summons and complaint).  Additionally, it appears from the docket that no certificate of default was ever formally entered, the undersigned recommends finding this request moot.  *See e.g., American Stevedoring, Inc. v. Banana Distribs.*, 98 Civ. 5782 (BSJ), 1999 U.S. Dist. LEXIS 14391, at *7 (S.D.N.Y. Sept. 13, 1999) ("A party, however, may oppose *entry of a default judgment* and 'for good cause shown the court may set aside an entry of default.'") (citing Fed. R. Civ. P. 55(c)) (emphasis added).

11-CV-00752 (RRM) (LB), 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011).  "However, mere conclusions of law or unwarranted deductions need not be accepted."  *Id.* (internal quotes omitted.)

### III.    DISCUSSION

#### A.  Claims Barred by *Heck v. Humphrey*

In his Amended Complaint, Plaintiff alleges that Defendants, "as a corrupted team," fabricated and tampered with evidence so that he could be convicted and deprived due process of law.  (ECF No. 8 at 5.)  Plaintiff alleges that employees of the SCPD and Suffolk County Officials created circumstances so it would appear as if Plaintiff committed the crimes he was convicted of when he had not.  (*Id.* at 6.)  Defendant McPartland, however, maintains that, to date, Plaintiff's convictions have not been rendered invalid, or otherwise reversed or expunged, as he is currently in custody serving those sentences.  (ECF No. 138 at 2-3.)

"When a claim for damages under § 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated." *Kogut v. Cnty. of Nassau*, No. 06-CV-6695 (JS) (WDW), 2009 WL 5033937, at *5 (E.D.N.Y. Dec. 11, 2009) (citing *Heck*, 512 U.S. at 487).  In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence *invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been *reversed* on direct appeal, *expunged* by executive order, declared *invalid* by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87 (emphasis added).

"A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  *Id.*  A plaintiff "must allege that his arrest

and detention has been reversed, expunged, or declared invalid, for a civil action before this

Court is not the appropriate vehicle to challenge, in the first instance, the validity of that action."

*Jefferson v. Chicara*, No. 13-CV-5649 (JS) (ARL), 2015 WL 1439932, at *5 (E.D.N.Y. Mar. 26,

2015).  This is known as the "favorable-termination rule."  *Opperisano v. P.O. Jones*, 286 F.

Supp. 3d 450, 454 (E.D.N.Y. 2018).

       Here, and as stated in the undersigned's prior R&Rs (ECF Nos. 102 and 128), Plaintiff

has not received a favorable termination; his conviction or sentence was not reversed on direct

appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*See Smalls v. City of New York*, 181 F. Supp. 3d 178, 188 (E.D.N.Y. 2016) ("New York law

broadly considers any termination of a criminal proceeding to have been terminated favorably

when there can be no further proceeding upon the complaint or indictment, and no further

prosecution of the alleged offense.") (internal quotes omitted); *see also Molina v. New York,* No.

21-CV-3144 (RPK) (JMW), 2023 U.S. Dist. LEXIS 8961, at *14 (E.D.N.Y Jan. 17, 2023)

(noting that plaintiff had not received a favorable termination nor a reversal of his conviction or

sentence or expungement by executive order).  Rather, Plaintiff's conviction was *upheld*

following Plaintiff's attempts at habeas corpus review and state-court appeals.  (ECF No. 73 at

1.)

       Because Plaintiff's claims of malicious prosecution and due process violations

necessarily rest on the validity of his underlying criminal convictions, they also require dismissal

under *Heck's* favorable termination rule.  *See Leach v. City of New York,* No. 20-CV-854 (LDH)

(JRC), 2022 U.S. Dist. LEXIS 173580, at *7-8 (E.D.N.Y. Sept. 26, 2022) (finding no allegations

that the conviction was overturned and dismissing plaintiff's § 1983 claims in accordance with

*Heck*); *Martinez v. DeMarco*, No. 13-CV-4209 (JFB) (AKT), 2018 WL 1115150, at *1 (E.D.N.Y. Feb. 26, 2018) (dismissing Plaintiff's § 1983 claims of, *inter alia*, malicious prosecution as barred by *Heck*); *Perez v. Cuomo*, No. 09-cv-1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotations omitted); *Duamutef v. Morris*, 956 F. Supp. 1112, 1115–16 (S.D.N.Y. 1997) ("The gravamen of plaintiff's complaint is that he was 'framed' for a murder he did not commit in retaliation for his political involvements. . .As required by *Heck,* these claims will be dismissed."). [4]

Accordingly, it is respectfully recommended that Plaintiff's claims sounding in malicious prosecution and due process violations be dismissed as barred by *Heck*'s favorable termination rule.

**B. Plaintiff's False Arrest and False Imprisonment Claims are Barred by the Statute of Limitations**

Defendant argues that Plaintiff's false arrest and imprisonment claims are barred by the applicable three-year statute of limitations because Plaintiff was arrested, convicted and

---

[4] Given the dismissal of Plaintiff's federal claims, it is respectfully recommended that the Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Dudley v. Singas*, No. 16-CV-1548 (JMA) (AYS), 2017 WL 5312131, at *3 (E.D.N.Y. Nov. 13, 2017) (dismissing plaintiff's federal claims under Heck and declining to exercise supplemental jurisdiction over plaintiff's state-law negligence claim); *Rosato v. New York Cnty. Dist. Attorney's Off.*, No. 09-CV-3742 (DLC), 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14, 2009) (dismissing plaintiff's malicious prosecution and due process claims under Heck and declining to exercise supplemental jurisdiction over plaintiff's state-law claims). In any event, Plaintiff's negligence claim warrants dismissal because "New York does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution." *See Dollard v. City of New York*, 408 F. Supp. 3d 231, 238 (E.D.N.Y. 2019). "To the extent that a claim for negligence. . . is based upon injury incident to an arrest, a plaintiff must resort to the traditional tort remedies of false arrest, false imprisonment, and malicious prosecution." *Id.*

sentenced in 2008 to 2009 for the underlying crimes and he did not bring these claims until October 2020—way beyond the three-year expiration date.  (ECF No. 138 at 3-4.)

"Under New York law, the statute of limitations for § 1983 claims premised on torts such as false arrest or false imprisonment is three years."  *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005).  For these claims, "the statute of limitations begins to run 'when the alleged false imprisonment ends.'"  *Jones v. City of New York*, 846 Fed Appx. 22, 24 (2d Cir. 2021) (citing *Wallace v. Kato,* 549 U.S. 384, 388–89 (2007)).  A false imprisonment ends when the victim "becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges."  *Id.*

The Court finds that the accrual of Plaintiff's claim began when Plaintiff was arrested and arraigned.  *See McDaniel v. City of New York*, 585 F. Supp. 3d 503, 514 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19-CV-11265 (AT) (RWL), 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022) (finding the statute of limitations for *pro se* plaintiff's claim for false arrest began to accrue upon the date of arraignment).  Plaintiff states that he was arraigned on November 1, 2007, which would mean that his claims should have been brought prior to November 2010. (ECF No. 124 at 5) ("On November 1, 2007, Plaintiff was arraigned in First District Court, 400 Carleton Ave, Central Islip, New York.")  There also does not appear to be, nor does Plaintiff assert, any available grounds to toll the accrual.  Accordingly, it is respectfully recommended that Plaintiff's claim for false arrest and false imprisonment be dismissed as untimely.

### C.  Plaintiff Fails to State a Claim for False Arrest and False Imprisonment

Defendant posits that Plaintiff's claims for false arrest and false imprisonment fail because Plaintiff's convictions conclusively establish the existence of probable cause which bars him from asserting the false arrest and false imprisonment claims.  (ECF No. 138 at 4.)

Under New York law, claims for false arrest and false imprisonment are the same, and the elements for both are the same under § 1983. *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011); *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). To establish a claim for false arrest, a plaintiff must allege that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Ames v. City of New York*, No. 20-cv-11081, 2023 U.S. Dist. LEXIS 52151, at *9 (S.D.N.Y. Mar. 27, 2023). The existence of probable cause is a complete defense to a claim for false arrest/false imprisonment. *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 377 (E.D.N.Y. 2013). "'[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause' sufficient to preclude a false arrest claim." *Poole v. Hawkins*, No. 18-CV-443 (MKB), 2021 WL 695119, at *6 (E.D.N.Y. Feb. 23, 2021) (quoting *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986)).

Here, it is undisputed that Plaintiff has been convicted. (*See* ECF No. 8); *see also Gross*, 2021 WL 2291839 at *1. Plaintiff's convictions necessarily establish a finding of probable cause. Accordingly, Plaintiff's claims for false arrest and false imprisonment fail and it is recommended that these claims be dismissed. *See Herbert v. Sanfeliz*, No. 22-CV-4299 (KMK), 2024 U.S. Dist. LEXIS 4323, at *4 (S.D.N.Y. Jan. 9, 2024) ("It is well-established that a person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest because his conviction establishes that his confinement was grounded on probable cause [and] therefore[] was privileged."); *Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 249 (E.D.N.Y. 2017) ("A person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest.").

15

**D.  Plaintiff Fails to State a Claim for Malicious Prosecution**

If the Court finds that Plaintiff's malicious prosecution claim does not necessarily seek to invalidate his underlying criminal convictions and are not otherwise barred under *Heck*, Plaintiff's malicious prosecution claim should nevertheless be dismissed because Plaintiff fails to adequately state a claim.

To establish a claim for malicious prosecution under § 1983 and New York law, a plaintiff must allege (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; *and* (4) actual malice as a motivation for defendant's actions.  *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015). "A Section 1983 malicious prosecution claim also requires a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Buari v. City of New York*, 530 F. Supp. 3d 356, 383 (S.D.N.Y. 2021) (quotes omitted).  To satisfy the second element, "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Rather, "[a] plaintiff need only show that the criminal prosecution ended *without* a conviction." *Id.* (emphasis added).

Plaintiff cannot meet even the more lenient *Thompson* bar here.  Because the criminal proceedings against Plaintiff ended with convictions and affirmances, it cannot be found that the proceedings were terminated in his favor.  (ECF No. 138 at 4-5.)  As a result, Plaintiff cannot maintain an action for malicious prosecution.  *See Harry v. City of New York*, No. 23-cv-69, 2024 U.S. App. LEXIS 1618, at *4 (2d Cir. Jan. 24, 2024) ("[P]robable cause to prosecute both

16

charges defeats Harry's claim.").  Accordingly, it is recommended that Plaintiff's claim for malicious prosecution be dismissed.

### E. Defendant McPartland is Immune from Suit
#### a. Sovereign Immunity

Defendant McPartland asserts that Plaintiff's claims must fail pursuant to the doctrine of immunity given that he acted within his prosecutorial capacity, representing the New York's interest.  (ECF No. 138 at 5.)

"The Eleventh Amendment provides immunity from suits for money damages in federal court to states, state entities, and state officials acting in their official capacities." *Irazu v. Aja*, No. 23-cv-702, 2023 U.S. App. LEXIS 32180, at *2 (2d Cir. Dec. 6, 2023) (citing U.S. Const. Amend. XI).  Put simply, if a defendant is deemed immune from suit, then the court is stripped of jurisdiction.  *See L. Offs. Of Geoffrey T. Mott v. Hayden,* 22-cv-07398 (JS) (SIL), 2023 U.S. Dist. LEXIS 217629, at *13 (E.D.N.Y. Dec. 6, 2023) (granting defendant's motion to dismiss where defendant, an official of the Nassau County Court, was entitled to Eleventh Amendment sovereign immunity protections).

"[P]rivate citizens may not maintain an action in federal court against a State itself, or against a state agency, unless the State has waived its sovereign immunity." *LoSardo v. Ribaudo*, No. 14-CV-6710 (JS) (GRB), 2015 U.S. Dist. LEXIS 13999, at *2 (E.D.N.Y. Feb. 5, 2015) (internal quotes omitted.)  State sovereign immunity can also be abrogated by Congress by "(1) unequivocally expressing its intent to do so, and (2) acting pursuant to a valid exercise of power." *Townsend v. New York*, No. 14-CV-6079 (CBA) (LB), 2015 WL 4692604, at *2 (E.D.N.Y. Aug. 6, 2015) (quoting *Kozaczek v. N.Y. Higher Educ. Servs. Corp.*, 503 F. App'x 60, 61 (2d Cir. 2012)).  "This jurisdictional bar applies regardless of the nature of the relief sought." *Murawski v. N.Y. State Bd. of Elections*, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  It is well settled that New York has not consented to § 1983 suits in federal court and Congress did not abrogate state sovereign immunity by enacting 42 U.S.C. §1983.  *Townsend*, 2015 WL 4692604 at *2.

Beyond voluntary waiver and congressional abrogation, there is one other exception to sovereign immunity: the *Ex Parte Young* exception.  The *Ex Parte Young* exception permits a suit for injunctive relief where the constitutionality of a state official's actions enforcing state law are challenged.  *Ex Parte Young*, 209 U.S. 123 (1908); *Bythewood v. New York*, No. 21-CV-04628 (LDH), 2022 WL 4661568, at *3 (E.D.N.Y. Sept. 30, 2022).  "The exception applies when the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Bythewood*, 2022 WL 4661568 at *3.

There is no indication that any exception applies here.  Plaintiff does not seek injunctive relief nor does he allege "an ongoing violation of federal law."  *See Bythewood*, 2022 WL 4661568 at *3.  Instead, Plaintiff seeks purely monetary damages of $7 million stemming from his state conviction.  *See Molina v. New York*, No. 21-CV-3144 (RPK) (JMW), 2023 U.S. Dist. LEXIS 8961, at *18 (E.D.N.Y. Jan. 17, 2023) (finding that no exception to the sovereign immunity doctrine applied).  Thus, on its face, immunity applies here.

Moreover, these allegations brought against Defendant McPartland in his official capacity as a prosecutor is barred under sovereign immunity.  *See Meadows v. Buffalo Police Dep't,* 21-CV-449-LJV-HKS, 2024 U.S. Dist. LEXIS 45712, at *20 (W.D.N.Y. Mar. 14, 2024) ("[B]ecause New York State prosecutors act on behalf of the state . . . when prosecuting a criminal matter, claims against…an assistant district attorney for prosecutorial acts are barred by sovereign immunity.") (internal citations omitted); *Johnson v. Persinger,* 18-CV-1152-(JLS)(HKS), 2023 U.S. Dist. LEXIS 117179, at *17 (W.D.N.Y. July 7, 2023) ("[A]ny official

18

capacity claims dealing with decisions about initially prosecuting Plaintiff and how to conduct that prosecution—made when the prosecutors were acting as agents of the state—are essentially against the state, and sovereign immunity bars such claims.") (citing *D'Alessandro v City of New York*, 713 F. App'x 1, at *8 (2d Cir. 2017)); *Redd v. Leftenant,* 16-CV-4919 (JFB) (SIL), 2017 U.S. Dist. LEXIS 145882, at *10 (E.D.N.Y. Sept. 7, 2017) ("[B]ecause the [state prosecutors] are state officers and because New York state has not waived its sovereign immunity for suits under Section 1983, these defendants are immune from suits in their official capacity.").  Thus, the proper entity would be the D.A.'s Office or other relevant governmental entity, not the officials here.  Accordingly, the undersigned respectfully recommends that claims brought against Defendant McPartland in his official capacity be dismissed.

### b.  Prosecutorial Immunity

In addition to sovereign immunity, Defendant McPartland also argues that prosecutorial immunity applies to Plaintiff's claims in light of the work he performed in his official capacity. (ECF No. 138.)

"It is well established that prosecutors are entitled to prosecutorial immunity for performing prosecutorial activities that are intimately associated with the judicial phase of the criminal process, including the decision whether to commence a prosecution." *Bussey v. Devane*, No. 13-CV-3660 (JS) (WDW), 2013 WL 4459059, at *3 (E.D.N.Y. Aug. 16, 2013) (internal quotation marks omitted) (citing *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Prosecutorial immunity from § 1983 claims is broad and covers essentially all acts "regardless of motivation, associated with [the prosecutor's] function as an advocate." *Id*. (citing *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995)).  Indeed, "absolute prosecutorial immunity creates a formidable obstacle for a

plaintiff." *Quartararo v. Catterson*, 917 F. Supp. 919, 951 (E.D.N.Y. 1996).  However, not all claims brought against individual prosecutors as defendants are unsustainable and the Court must look at the nature of the prosecutor's function rather than the identity or status of who performed the function.  *Id*. at 952 (citing *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995)).  Administrative or investigative activities initiating and pursuing a criminal prosecution entitle a prosecutor to absolute immunity under the doctrine, while administrative duties and investigatory functions that do not relate to preparation for the initiation of a prosecution or judicial proceedings are not so protected.  *See id*. at 952 (citations omitted).  "A government official does not have absolute immunity for acts that are manifestly or palpably beyond his authority or performed in the clear absence of all jurisdiction." *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (internal quotation marks and citations omitted). The party claiming absolute immunity has the burden of establishing its applicability and "once a court determines that absolute immunity applies, 'the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.'" *Kroemer v. Tantillo*, 758 F. App'x 84, 87 (2d Cir. 2018) (quoting *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)).

Per the Complaint, Plaintiff merely alleges that McPartland ordered that an internal investigation be closed.  (ECF No. 8 at 12.)  Beyond these assertions, there are no further details on McPartland's involvement in the closure of the investigation.  Nevertheless, the allegations against McPartland would fit squarely within the duties of a prosecutor.  He was acting within the scope of his duties by "pursuing a criminal prosecution [and is therefore] immune from a civil suit for damages under § 1983." *Anilao v. Spota*, 774 F. Supp. 2d 457, 476, 478 (E.D.N.Y. 2011) (noting that "a prosecutor will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to

20

liability only when he has acted in the clear absence of all jurisdiction.") (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)); *Shmueli v. City of N.Y.*, 424 F.3d 231, 237-38 (2d Cir. 2005) (dismissing claims against prosecutor because "[a] prosecutor is also entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information."); *Kroemer*, 758 F. App'x. at 87 (finding that allegations that ADA "fraudulently amended [the] indictment" and "then fabricated evidence to support that amendment by coaching a witness" "f[ell] squarely within the prosecutor's role as advocate and therefore remain[ed] protected by absolute immunity."); *Hill*, 45 F.3d at 661 (finding that a prosecutor's conduct including "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate").  Thus, as harsh as these allegations against McPartland are, he is still entitled to prosecutorial immunity because he acted within the scope of his duties as an advocate for the People.

### c. Qualified Immunity

In addition to sovereign and prosecutorial immunity, Defendant McPartland also emphasizes his entitlement to qualified immunity here.

Although prosecutors receive absolute immunity for acts performed in connection with the judicial phase of the criminal process, they "receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not create to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'"  *Soto v. City of New York*, 132 F. Supp. 3d 424, 440 (E.D.N.Y. 2015) (citing Simon 727 F.3d at 171); *see also Rich v. New York*, No. 21-cv-3835 (AT), 2022 U.S. Dist. LEXIS 60779, at *17 (S.D.N.Y. Mar. 31, 2022) (stating that prosecutors have qualified immunity for investigative functions such

as those taken before probable cause exists to arrest a perpetrator). "Evaluating evidence and interviewing witnesses" are examples in which absolute immunity would apply, while "putting searches 'for the clues and corroboration' leading to an arrest" would fall under qualified immunity. *Soto*, 132 F. Supp. 3d at 440 (citing *Giraldo v. Kessler*, 694 F.3d161, 166 (2d Cir. 2012)).

Government officials are protected from civil damages liability under qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kellner v. City of New York*, No. 17-CV-1268 (MKB), 2021 WL 4251343, at *15 (E.D.N.Y. Sept. 16, 2021) (internal quotation marks and citations omitted). Specifically, when considering a qualified immunity defense, the court considers (1) whether the official violated a statutory or constitutional right, and (2) whether the right was clearly established at the time of the challenged conduct.[5] *Cerisier v. City of New York*, No. 22-1756, 2023 U.S. App. LEXIS 18298, at *4 (2d Cir. July 19, 2023). Other cases have also considered whether the defendant's action was objectively legally reasonable in light of the clearly established legal rules. *Maganiello v. City of N.Y.,* 612 F.3d 149, 164 (2d Cir. 2010). Qualified immunity may be found on a Rule 12(b)(6) motion if the complaint establishes the circumstances that are required for a qualified immunity defense. *Hirsch v. Desmond*, No. 08-CV-2660 (JS) (AKT), 2010 U.S. Dist. LEXIS 105736, at *5 (E.D.N.Y. Sep. 30, 2010). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation[,]" because the defense is lost if a case erroneously proceeds to trial.

---

[5] "A right is clearly established if 'at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Barret v. Livingston Cty.*, No. 14-CV-6593 (FPG), 2019 U.S. Dist. LEXIS 36914, at *49 (W.D.N.Y. Mar. 7, 2019) (citing *Thon v. Grimshaw*, No. 13-cv-898, 2016 U.S. Dist. LEXIS 115764, at *10 (N.D.N.Y. Aug. 26, 2016)).

*Pearson v. Callahan*, 555 U.S. 223, 231-32, (2009) (citations omitted); *see also Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022) ("Although it is possible for a qualified immunity defense to succeed on a motion to dismiss, such a defense 'faces a formidable hurdle . . . and is usually not successful.'") (internal citations omitted).

As is relevant here, "[a] presumption of probable cause is created by a grand jury indictment." *See McLennon v. Vorrao*, No. 13-CV-128 (KAM) (SMG), 2015 U.S. Dist. LEXIS 42920, at *26 (E.D.N.Y. Mar. 31, 2015). The presumption may be "rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)) (internal cited omitted). Plaintiff has the burden to rebut "the presumption of probable cause that arises from the indictment." *Id.* Plaintiff may not plead allegations "with mere 'conjecture' and 'surmise' that [the] indictment was procured as a result of conduct undertaken by the defendants in bad faith." *See Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 450 (E.D.N.Y. 2015) (citing *Savino*, 331 F.3d at 73).

Here, the qualified immunity defense can be established based on the face of the Complaint itself. Plaintiff has not and cannot overcome the first prong of the qualified immunity defense, because he cannot demonstrate that McPartland violated a statutory or constitutional right. *See also Kee v. City of New York*, 12 F.4th 150, 161 n.12 (2d Cir. 2021) (declining to consider qualified immunity because there was no constitutional violation). Probable cause existed for Plaintiff's arrest and subsequent conviction and sentencing. Indeed, this quantum of suspicion was reinforced when Plaintiff failed to overturn his conviction.

Further, even construing the Complaint's allegations liberally, Plaintiff has not produced any evidence beyond mere speculation demonstrating that Defendant Spota "refused to conduct

an investigation into these matters because he didn't want to expose the conncetion [sic] between Matthew Madonna and the Suffolk County Officials…." including Defendant McPartland (ECF No. 8 at 10) or that Plaintiff's case with Suffolk County Internal Affairs was closed by McPartland (*id.* at 12). That is, there could have been other reasons for Defendant's supposed closure of the investigation.

Cases in this Circuit have denied applications of qualified immunity where the malicious prosecution claims and/or false arrest or imprisonment claims were still viable and not dismissed because of want of timeliness or insufficient detail. *See McLennon v. Vorrao,* No. 13-CV-128 (KAM) (SMG), 2015 U.S. Dist. LEXIS 42920, at *27, 32-33 (E.D.N.Y. Mar. 31, 2015) (finding some of plaintiff's claims to result in favorable termination and denying defendant's motion to dismiss for malicious prosecution and noting that "plaintiffs have sufficiently alleged that their prosecution was not based on probable cause and that the officer defendants acted in bad faith by fabricating, misrepresenting, and withholding evidence, a reasonable officer would not have considered the defendants' alleged conduct to be lawful"); *Rogers v. Bisono*, No. 15-CV-6670, 2016 U.S. Dist. LEXIS 105096, at *13 (S.D.N.Y. Aug. 9, 2016) (finding plaintiff stated a legally sufficient claim for false arrest and that "[d]efendants [could not] be protected by qualified immunity since they allegedly fabricated evidence" surrounding his arrest); *Kanciper v. Lato*, 989 F. Supp. 2d 216, 232-33 (E.D.N.Y. 2013) (finding that plaintiff's malicious prosecution claims survived the statute of limitations and allowing plaintiff to replead and noting insufficient information at the pleadings stage to determine whether the defendant was entitled to qualified immunity because there had been no exchange of policies indicating violations of any policies and could have demonstrated whether Spota "looked the other way"). This case is distinguishable. Because the Court has already found that Plaintiff's claims were either time

barred or factually insufficient (ECF Nos. 102 and 128), the Court should accordingly find that Defendant McPartland is entitled to qualified immunity.

### F. Plaintiff's Inability to Further Amend his Claims

"A *pro se* complaint is to be read liberally. Certainly, the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999)).  However, even *pro se* plaintiffs should be denied leave to replead where it is clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile. *Taylor v. Keen*, No. 11-CV-5221 (JFB) (ARL), 2012 WL 3835383, at *5 (E.D.N.Y. Sept. 5, 2012).

As was found in the prior R&Rs, nt, there does not seem to be any further facts or legal theories Plaintiff could advance if given leave to amend, which could cure the deficiencies of his current claims.  Plaintiff's claims will either be barred by *Heck* or the applicable statute of limitations or his conviction will otherwise lead to a dismissal of his claims.  For these reasons, it is respectfully recommended that the Court refrain from granting any further leave to replead beyond the pleadings to date.  *See Cuoco*, 222 F.3d at 112 ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied"); *Chudnovsky v. Leviton Mfg. Co*., 158 F. App'x 312, 314 (2d Cir. 2005) (denying leave to amend where plaintiff already had one opportunity to amend his complaint and "granting leave to amend would be unproductive or futile . . . [because plaintiff] did not indicate that he could allege additional facts that would cure the deficiencies in his already-amended complaint); *see also Murdock v. Legal Aid Soc'y*, No. 14-CV-0508 (JS) (SIL), 2015 U.S. Dist. LEXIS 1487, at *4 (E.D.N.Y. Jan. 6, 2015) (holding that leave to amend

would be futile because plaintiff's claims failed as a matter of law, and there was no possibility he could state a plausible § 1983 claim against defendants).

### IV.   <u>CONCLUSION</u>

Based on the foregoing, the undersigned respectfully recommends Defendant McPartland's motion for an order dismissing Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 138) be granted, without leave to replead.

## V.    <u>OBJECTIONS</u>

The Clerk of the Court is directed to serve a copy of this R&R upon both pro se Plaintiff and pro se Defendant.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision") (citation omitted); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        August 29, 2024

                              RESPECTFULLY RECOMMENDED,

                              /s/ *James M. Wicks*
                              JAMES M. WICKS
                              United States Magistrate Judge